UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

– against –

**MEMORANDUM & ORDER**
24-cr-00206 (NCM)

HALIMA SALMAN,

*Defendant.*

---

**NATASHA C. MERLE**, United States District Judge:

Defendant Halima Salman is charged in an indictment with receiving military-type training from a foreign terrorist organization ("FTO"). *See* Indictment, ECF No. 13. Before the Court are several pretrial motions brought by defendant, which include: (1) a motion to direct the government to provide unredacted copies of its filings pursuant to the Classified Information Procedures Act ("CIPA") 18 U.S.C. app. 3 § 4; (2) a motion for a bill of particulars; (3) a motion to dismiss the indictment due to pre-indictment delay; (4) a motion to dismiss the indictment due to violation of the non-delegation doctrine; and (5) a motion to suppress statements made by defendant during certain interviews with federal law enforcement. ECF Nos. 71–74, 77.

For the reasons stated below, the Court grants in part and denies in part defendant's motion for a bill of particulars. The Court denies defendant's motions to dismiss the indictment, to suppress statements made by defendant in interviews with federal law enforcement, and to review the government's classified CIPA 4 submission.

**DISCUSSION**

## I.     Motions to Dismiss the Indictment

Defendant makes two motions to dismiss the indictment that charges her with receiving military-type training from an FTO. Defendant moves first to dismiss the indictment due to pre-indictment delay, *see* ECF No. 73, and second to dismiss the indictment for violation of the non-delegation doctrine, *see* ECF No. 74. For the reasons discussed below, these motions are denied.

### A. Pre-Indictment Delay

Defendant argues that the charge against her must be dismissed because the inordinate delay between the government's investigation and the filing of the indictment violated her Fifth Amendment right to due process. ECF No. 73 at 4.[1] In opposition, the government argues that the indictment was brought against defendant within the statute of limitations, that less than 18 months passed between when the government opened its investigation into defendant and the grand jury's indictment, and that defendant has failed to show that any delay was for the purpose of gaining a tactical advantage over her. Mem. of Law in Opp'n to Def.'s Pretrial Mots. ("Opp'n") 42–46, ECF No. 80. The government claims that the FBI began to review the contents of phones recovered from Abu Ali—defendant's husband and a suspected ISIS fighter—when it received gold copies[2] of the phones in August 2022. The phones contained various photos and video of defendant, as well as an alleged military training certificate for defendant ("Military Training Document"). The FBI opened an investigation into defendant four months later

---

[1]     Throughout this Order, page numbers for docket filings refer to the page numbers assigned in ECF filing headers.

[2]     The government represents that a "gold copy" is a forensic image of a device, or a "bit-for-bit copy." Opp'n 24.

in December 2022. Opp'n 27–30. Defendant does not dispute this timeline, and instead questions why the phones, which were collected in 2019, were not examined until 2022. *See* Reply Mem. in Supp. of Def.'s Pretrial Mots. ("Reply") 23, ECF No. 87. For the reasons stated below, the Court denies defendant's motion to dismiss the indictment due to pre-indictment delay.

Statutes of limitations provide "the primary guarantee[] against bringing overly stale criminal charges." *United States v. Marion*, 404 U.S. 306, 322 (1971).[3] Accordingly, a criminal charge brought within the statute of limitations is presumptively reasonable. However, the statute of limitations is not the only protection against overly stale charges. The due process clause of the Fifth Amendment also has a role to play in protecting defendants against oppressive prosecutorial delay. *United States v. Lovasco*, 431 U.S. 783, 789 (1977). Even though the due process clause provides protections against oppressive delay, prosecutors nevertheless "do not deviate from fundamental conceptions of justice when they defer seeking indictments until they have probable cause to believe an accused is guilty." *Id.* at 790–91. In fact, prosecutors do not have a duty to seek an indictment "as soon as probable cause exists but before they are satisfied they will be able to establish the suspect's guilt beyond a reasonable doubt." *Id.* at 791.

Here, defendant does not argue that the statute of limitations for the charge against her has expired, but instead argues that her due process rights have been violated. In order to establish a due process claim, defendant must demonstrate that she was prejudiced by the delay. In addition to prejudice to the accused, the "due process inquiry must consider the reasons for the delay[.]" *Id.* at 790. Thus, a defendant's Fifth

---

[3]    Throughout this Order, the Court omits all internal quotation marks, footnotes, and citations, and adopts all alterations, unless otherwise indicated.

Amendment constitutional rights are violated, and dismissal of a stale indictment is warranted, where the defendant shows that pre-indictment delay causes "substantial prejudice to the defendant's ability to present [her] defense" *and* where "the delay was an intentional device to gain a tactical advantage over the accused." *United States v. Cornielle*, 171 F.3d 748, 752 (2d Cir. 1999). Where a defendant offers "no evidence that intentional delay occurred," a pre-indictment delay claim "must [] be rejected, without regard to whether the requirement of actual prejudice was satisfied." *United States v. Alameh*, 341 F.3d 167, 176 (2d Cir. 2003).

Defendant's motion to dismiss the indictment fails because she has not identified any prejudice to her, such as specific evidence or witnesses rendered unavailable, due to the government's delay. Defendant argues that since the defeat of the Islamic State of Iraq and al-Sham ("ISIS") in 2019, ISIS has become "much more decentralized and no longer operates as it did before," and thus "the repository of documentation with potential exculpatory evidence for the defense in this case no longer exists." ECF No. 73 at 9. Additionally, defendant argues that when she was in Syria, she "interacted with numerous people who could have testified to her actions, her character, and her whereabouts during the period when the government alleges she received military training," but those potential witnesses are unavailable because "they are dead or missing." ECF No. 73 at 9. However, defendant does not explain what the contents of any ISIS documents would be, and she does not identify the unavailable witnesses nor explain what their testimony would be other than a general description that they would testify about Salman's "actions," "character," and "whereabouts." ECF No. 73 at 9. Defendant's arguments on this point constitute speculation that had the government brought charges against her earlier, she could have found some exculpatory evidence. This is insufficient to meet her

4

burden of demonstrating that she suffered actual prejudice due to the government's delay. *See United States v. Alharbi*, No. 22-2092, 2024 WL 939629, at *1 (2d Cir. Mar. 5, 2024) (summary order) (finding the district court correctly noted that the defendant failed to identify evidence or witnesses rendered unavailable because of the government's delay when considering potential prejudice of delay).

Moreover, defendant has failed to establish that any alleged prejudice to her was due to the government's actions. Defendant argues that evidence and witnesses were rendered unavailable largely due to the fall of ISIS in 2019 and the resultant loss of documents. ISIS fell around the same time defendant surrendered to the Syrian Democratic Forces ("SDF") and was placed in a detention camp. *See* ECF No. 73 at 5. Thus, even if defendant had been indicted immediately upon her surrender to the SDF, at that point "ISIS was no longer functioning at an institutional level that could keep and track documents." ECF No. 73 at 9. Thus, defendant has not demonstrated that the unavailability of witnesses and evidence stems from the government's delay in charging her, rather than from the defeat of ISIS.

Next, defendant has offered no evidence to suggest that any delay by the government in obtaining an indictment against her was an intentional device to gain a tactical advantage. Defendant argues that "[i]t is impossible to view this lengthy delay" in prosecuting her "as unintentional." ECF No. 73 at 10. However, unsupported and conclusory allegations of intentional pre-indictment delay are insufficient to warrant dismissal of an indictment. *See United States v. Lewis*, No. 16-cr-00786, 2018 WL 6241445, at *8 (S.D.N.Y. Nov. 29, 2018) (declining to dismiss indictment as defendant "failed to show that any delay in charging him was the result of any intentional or bad-faith effort by the government"); *United States v. Delacruz*, 970 F. Supp. 2d 199, 203

(S.D.N.Y. 2013) (declining to dismiss indictment despite sixteen year delay because the defendant "ha[d] not made any showing that the preindictment delay was an intentional device designed by the Government to gain a tactical advantage").

Additionally, while defendant argues that the government began investigating her in 2019, there is no indication that the government had reason to believe in 2019 that she had received military-type training. As represented by the government, and undisputed by defendant, the FBI received and began to review the gold copies of Abu Ali's phones, which contained the alleged Military Training Document, in August 2022. Opp'n 27. Even taking this date as the operative time when the government could have brought a charge against defendant, notwithstanding the fact that the government represents that it did not yet have an English translation of the Military Training Document or Salman's alias— or "kunya"—to connect her to the document, this delay would constitute approximately 22 months. *See Alharbi*, 2024 WL 939629, at *1 (considering time between when the government could have brought charges and the indictment, and upholding denial of motion to dismiss indictment because district court concluded delay was caused by an ongoing investigation); *see also* Opp'n 30–31, 47 (representing that the FBI received an English translation of the alleged Military Training Document in August or September of 2023). Courts have found far longer periods between the prosecutor's possession of inculpatory evidence and the filing of an indictment not to constitute an undue delay where the defendant's arguments regarding prejudice are speculative and the defendant has offered no evidence that there was a tactical reason for the delay. *United States v. Mickens*, No. 20-258, 2021 WL 3136083, at *1–2 (2d Cir. July 26, 2021) (summary order) (upholding denial of motion to dismiss indictment based on 6-year period between cooperator's inculpation of the defendants and indictment because the defendants'

arguments regarding missing witnesses and evidence were highly speculative and there was no indication of an improper purpose behind the delay).

As defendant has failed to identify evidence or witnesses rendered unavailable by the government's delay, or to demonstrate improper conduct by the government which would show that the delay in her indictment was for the purpose of gaining a tactical advantage, defendant's motion to dismiss the indictment due to pre-indictment delay is denied.[4]

### B. Non-Delegation Doctrine

Defendant next argues that the charge against her must be dismissed as the statute under which she is charged, 18 U.S.C. § 2339D(a), is unconstitutional pursuant to the non-delegation doctrine. *See* ECF No. 74 at 4. According to defendant, the statute impermissibly delegates the authority to define an FTO to the Secretary of State and violates the separation of powers between the legislative and executive branches. ECF No. 74 at 4. Specifically, she argues that the use of an agency's determination that an organization is an FTO to "support the proscription of private conduct without additional Congressional action," is an exercise of legislative authority that has been impermissibly delegated to the executive branch, *see* ECF No. 74 at 19, and that the statute does not provide sufficient guidance to the executive branch on fundamental policy questions, *see*

---

[4] The Court also denies defendant's request for an evidentiary hearing as she has failed to allege any factual issue to be resolved through a hearing, nor has she identified evidence she would offer at such a hearing. *See United States v. Laureano*, No. 22-cr-00058, 2023 WL 4156930, at *5 (S.D.N.Y. June 23, 2023); *see also United States v. Berry*, No. 20-cr-00084, 2021 WL 2665585, at *4 (S.D.N.Y. June 29, 2021) (denying alternative request for evidentiary hearing where defendants "fail[ed] to identify any specific evidence—testimonial or otherwise—that they would raise at an evidentiary hearing that could establish that they have suffered actual and substantial prejudice as a result of the pre-indictment delay.").

ECF No. 74 at 8. In opposition, the government argues that Section 2339D does not violate the non-delegation doctrine as Congress has articulated an intelligible principle by which the Secretary of State must constrain his or her power to define an FTO, and thus the delegation of this authority is not unconstitutional. Opp'n 39. For the reasons stated below, defendant's motion to dismiss the indictment due to violation of the non-delegation doctrine is denied.

The Constitution of the United States provides that "[a]ll legislative Powers herein granted shall be vested in a Congress of the United States." U.S. Const. Art. 1 § 1. Accordingly, the Supreme Court has instructed that Congress "may not transfer to another branch powers which are strictly and exclusively legislative." *Gundy v. United States*, 588 U.S. 128, 135 (2019). Notwithstanding this proscription, the Supreme Court has held that the Constitution permits Congress to "confer substantial discretion on executive agencies to implement and enforce the laws." *Id.* To determine whether an Act of Congress conferring discretion to the executive branch runs afoul of Article I of the Constitution, the Supreme Court has held "time and again, that a statutory delegation is constitutional as long as Congress lays down by legislative act an intelligible principle to which the person or body authorized to exercise the delegated authority is directed to conform." *Id.*

To evaluate the delegation of authority, and whether that delegation is accompanied by an intelligible principle, courts are directed to "constru[e] the challenged statute to figure out what task it delegates and what instructions it provides." *Id.* at 135–36. "[I]mpermissible delegation has been rarely found." *United States v. Dhafir*, 461 F.3d 211, 215 (2d Cir. 2006). The Supreme Court has "over and over upheld even very broad delegations," such as delegations to agencies to regulate in the public interest, to set "fair

and equitable" prices and "just and reasonable" rates, or to issue air quality standards that are "requisite to protect the public health." *United States v. Augustine*, No. 18-cr-00393, 2020 WL 9199944, at \*10 (E.D.N.Y. Sept. 8, 2020), *report and recommendation adopted*, 2021 WL 1381060 (Apr. 13, 2021), *and report and recommendation adopted*, 2021 WL 1394059 (Apr. 13, 2021) (collecting cases).

To determine whether Congress has supplied a sufficient intelligible principle to the Secretary of State in designating FTOs, the Court looks to the legislative act which makes the delegation. The statute at issue here, Section 2339D(a) and (c)(4), defines a "foreign terrorist organization" as an "organization designated as a terrorist organization" under Section 219 of the Immigration and Nationality Act ("INA"). 18 U.S.C. § 2339D(a), (c)(4). Section 219 of the INA, codified at 8 U.S.C. § 1189, allows the Secretary of State, "in consultation with the Secretary of the Treasury and the Attorney General," to designate an organization as an FTO if he or she finds: (1) it is a foreign organization; (2) the organization engages in terrorist activity or retains the capability and intent to engage in terrorist activity or terrorism; and (3) the organization's terrorist activity or terrorism threatens the security of United States nationals or the national security of the United States. 8 U.S.C. § 1189(a)(1)(A)–(C). "Terrorist activity" is defined as any activity which is unlawful under the laws of the place where it is committed or would have been unlawful under the laws of the United States or any state had it been committed there, and involves actions listed at 8 U.S.C. § 1182(a)(3)(B)(iii)(I)–(VI), such as hijacking, kidnapping, or the use of a nuclear weapon. "Terrorism" is defined as "premeditated, politically motivated violence perpetrated against noncombatant targets by subnational groups or clandestine agents." 22 U.S.C. § 2656f(d)(2).

Section 1189 also sets out a procedure by which the Secretary of State may designate an FTO. Seven days prior to designating an FTO, the Secretary of State is required to notify certain members of Congress and must set out in writing the intent to make a designation as well as the findings that the organization meets the requirements of Section 1189(a) and the factual basis for those findings. *See* 8 U.S.C. § 1189(a)(2)(i). This designation may be blocked or revoked by an Act of Congress. *Id.* § 1189(a)(5).

Thus, Congress has provided guidance to the executive that must be followed to determine when an organization may be designated as an FTO and has delineated procedural mechanisms by which Congress exercises oversight over the designation process. Courts within this Circuit have declined to find a statute unconstitutional where it incorporates the definition of an FTO into proscribed criminal activity. *See Augustine*, 2020 WL 9199944 at *11 (finding that the Secretary of State's discretion in making FTO designations is "sufficiently constrained" due to the "detailed statutory guidance regarding the types of activities in which a group must engage to qualify as a terrorist organization"); *United States v. Taleb-Jedi*, 566 F. Supp. 2d 157, 172 (E.D.N.Y. 2008) ("Congress has established detailed procedures to designate organizations as FTOs and it retains the power to revoke such a designation when made. In addition, the organization has the ability to challenge the designation before the D.C. Circuit.").

Defendant attempts to distinguish cases where courts found constitutional the delegation to the Secretary of State the ability to designate an FTO. She argues that she does not object to the grant of authority to the Secretary of State to determine what constitutes an FTO, but instead objects to the incorporation of the FTO designation "into 2339D's imposition of personal criminal liability on American citizens." Reply 20. However, as defendant concedes, several of the cases cited by the government "do

consider the gravity of the sanctions imposed by 2339D" and find the delegation constitutional nonetheless. Reply 21 (citing *Augustine*, 2020 WL 9199944; *United States v. Chandia*, 514 F.3d 365 (4th Cir. 2007); *United States v. Assi*, 414 F. Supp. 2d 707 (E.D. Mich. 2006)). Nevertheless, defendant argues that since the "most recent of these rulings," the Supreme Court has "indicated its openness to revisiting the nondelegation doctrine, particularly for statutes that impose criminal sanctions." Reply 21. At oral argument, defense counsel invited the Court to "intuit what the Supreme Court would do in a case like this[.]" Tr. of Oral Arg. ("Oral Arg. Tr.") 121:5–11, ECF No. 117. However, as of this ruling, the nondelegation doctrine and the intelligible principle test, as articulated by the Supreme Court, are binding on this Court. The Court declines to disregard Supreme Court and Second Circuit precedent in anticipation of those precedents hypothetically being overruled in the future. *See United States v. Summerville*, No. 24-cr-00292, 2025 WL 568046, at *2 (E.D.N.Y. Feb. 20, 2025) ("Fundamentally, this Court lacks the authority to try to read the tea leaves in that way."); *Packer ex rel. 1-800-Flowers.com, Inc. v. Raging Cap. Mgmt., LLC*, 105 F.4th 46, 54 (2d Cir. 2024) *cert. denied sub. nom. Raging Cap. Mgmt., LLC v. Packer*, 145 S. Ct. 550 (2024) ("District Courts . . . are obliged to follow our precedent, even if that precedent might be overturned in the near future.").

Thus, the Court finds that the statutory scheme of § 2339D(a) provides an intelligible principle to which the Secretary of State's designations must conform. Accordingly, Congress's delegation of authority to designate FTOs, and the incorporation of the FTO designation into a criminal statute, does not violate Article I of the United States Constitution, and defendant's motion to dismiss the indictment for violation of the non-delegation doctrine is denied.

## II.    Motion for a Bill of Particulars

Defendant moves for a bill of particulars identifying the approximate date of her alleged military-type training, the location of her alleged military-type training, and a detailed description of the military-type training she is alleged to have received. ECF No. 72 at 8. For the reasons stated below, defendant's motion for a bill of particulars is granted in part and denied in part.

Pursuant to Federal Rule of Criminal Procedure 7(f), a district court may "direct the government to file a bill of particulars." Fed. R. Crim. P. 7(f). A bill of particulars may allow a defendant "to identify with sufficient particularity the nature of the charge pending against [her], thereby enabling defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should [she] be prosecuted a second time for the same offense." *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987). "In deciding a motion for a bill of particulars, the important question is whether the information sought is necessary, not whether it is helpful." *United States v. Howard*, No. 12-cr-00084, 2013 WL 321551, at *6 (W.D.N.Y. Jan. 2, 2013), *report and recommendation adopted*, 2013 WL 321530 (Jan. 28, 2013).

When determining whether defendant has been supplied with sufficient particularity regarding the charge against her, the Court may look beyond the indictment and consider the totality of the information that has been provided to defendant. *See United States v. Barnes*, 158 F.3d 662, 665–66 (2d Cir. 1998); *see also United States v. Morgan*, 690 F. Supp. 2d 274, 284 (S.D.N.Y. 2010) ("If the information the defendant seeks is provided in the indictment or in some acceptable alternate form, such as discovery or a criminal Complaint, no bill of particulars is required."). The decision

12

whether to grant a motion for a bill of particulars lies within the sound discretion of the district court. *United States v. Ramirez*, 609 F.3d 495, 502 (2d Cir. 2010).

Defendant argues that she is entitled to the particulars requested in her motion because the indictment against her lacks sufficient specificity to allow her to prepare her defense. ECF No. 72 at 3. Defendant argues that she has not received any information regarding the date, location, or nature of the training she is alleged to have received. ECF No. 72 at 5. In response, the government argues first that defendant has sufficient information to prepare a fulsome defense due to information provided by the government in the indictment, complaint, and discovery that has been exchanged. Opp'n 49–50. Additionally, at oral argument, the government emphasized its entitlement to proceed to trial on multiple theories of liability, and claims that the government is keeping no information about its allegations in the case from defendant. *See* Oral Arg. Tr. 112:4–11, 117:4–11.

Defendant's request for particulars regarding the specifics of the military-type training she is alleged to have received is denied. As noted by the government in its opposition brief, the government alleges that defendant received training that included the handling and operation of an AK-47 style rifle. Opp'n 49. Defendant is aware of this allegation because of the government's statements in its complaint, *see* Compl. ¶¶ 2, 23, ECF No. 1, as well as discovery produced to defendant, which includes a video in which defendant is alleged to be holding an AK-47 style rifle. This level of detail is sufficient to put defendant on notice of the nature of the government's charge against her and allow her to prepare for trial.

Defendant's request for particulars regarding the approximate location and date of alleged military-type training is granted. The government alleges defendant received

military-type training somewhere in Syria, sometime between the date of her marriage in July 2017 and the date that the photo of the Military Training Document was taken in March 2018. Oral Arg. Tr. 112:14–24. The defendant argues that she is ill-equipped to mount an adequate pretrial investigation based on this information because she is unsure where she was at various times during the period in question, and because she has received no discovery as to where any trainings took place. Oral Arg. Tr. 107:11–13, 110:12–13. The government argues that the information is adequate because defendant has the best access to where she was during the time frame in question, and because the government does not know exactly how many training locations there were. Oral Arg. Tr. 114:2–3, 15–19, 116:13–16.

The Court is aware that a time span of greater than nine months for a defendant's alleged crime can be adequate and make a bill of particulars unwarranted. *See e.g.*, *United States v. Hashmi*, No. 06-cr-00442, 2009 WL 4042841, at *4 (S.D.N.Y. Nov. 18, 2009). Nevertheless, the court looks to the relevant circumstances and totality of information in the individual case to determine whether defendant has the information necessary to investigate the charge against her. Here, given the factual context and record in this case, the Court finds that additional particulars as to the timeframe are necessary for defendant to mount an independent pretrial investigation. *See United States v. Ray*, No. 20-cr-00110, 2021 WL 3168250, at *11 (S.D.N.Y. July 27, 2021) (ordering bill of particulars because the "defense [was] entitled to a more specific time range . . . so as to mount an independent pretrial investigation").

Additionally, informing defendant that the crime allegedly occurred somewhere in Syria is also inadequate to allow for a pretrial investigation here. While the government has pointed to *USA v. Warsame*, 537 F. Supp. 2d 1005 (D. Minn. 2008), to support the

14

proposition that providing an entire country is sufficient particularity as to location of an alleged crime, *Warsame* is inapposite. *See* Opp'n 50; Oral Arg. Tr. 113:4–14. The question presented in that case was whether the defendant had sufficient information as to the type, not location, of material support he was alleged to have provided to an FTO to enable him to make an "as-applied constitutional challenge" to the statute under which he was charged. *See Warsame*, 537 F. Supp. 2d at 1011–12. The court concluded that the allegation that the defendant had "participated in an Al Qaeda training camp in Afghanistan," and gave "English-language lessons to Al Qaeda members in Pakistan," among other particulars, was sufficient to "enable Warsame to effectively challenge the constitutionality of § 2339B as it applie[d] to his alleged conduct in [that] case." *Id.* at 1011. This is more akin to the government informing defendant here that she is alleged to have received training that included the handling and operation of an AK-47 style rifle. While additional description of the conduct may not be necessary, it does not answer the question of whether more particulars as to location are necessary here to allow defendant to investigate that alleged conduct. The court in *Warsame* did not address whether providing an entire country as the location of an alleged crime was sufficient to allow the defendant in that case to mount an independent pretrial investigation, as is at issue here. Thus, additional particulars as to the location of defendant's alleged military-type training are necessary for defendant to mount an independent pretrial investigation.

While the government has represented that it was aware of a handful of locations where military training by the Nusaybah Katiba—an ISIS military battalion—occurred, and intimated that those locations either were clear or would be made clear to defendant, *see* Oral Arg. Tr. 116:11–117:3, as of the date of oral argument on the instant motion the government had not identified the location of the military training that it believes it can

link to the defendant.[5] As to the time frame of the alleged military-type training, defendant has indicated that she is unsure where she was during the approximately nine month window provided by the government. *See* ECF No. 72 at 6; Reply 25; Oral Arg. Tr. 110:12–13. Thus, defendant is in a position of not having information concerning the location (or even a handful of potential locations) where she is alleged to have engaged in military-type training, while also not having a sufficiently narrow time frame where she may be able to deduce where the alleged training may have occurred to prepare her defense. Consequently, defendant is ill-equipped to mount a full investigation of the alleged military-type training and to interpose a defense.

Accordingly, the government is ordered to provide particulars regarding the dates and locations it alleges that defendant received military-type training, if and when that information becomes available to the government. If the government does not currently have this information, it is ordered to provide a bill of particulars identifying the dates and locations where it is aware that military training associated with the Nusaybah Katiba occurred in Syria during the relevant time period, whether or not the government alleges that defendant was present at those trainings. If the government determines that it does not have this precise information, it "may so indicate in its bill of particulars and provide as much detail as it can." *United States v. Bin Laden*, 92 F. Supp. 2d 225, 237 (S.D.N.Y.

---

[5] Oral argument was held on defendant's pre-trial motions on August 7, 2025, during which hearing the government made the statement that the locations of the Nusaybah Katiba training of which it was aware either were "clear or will be made clear." Oral Arg. Tr. 116:11–117:3. The government filed a letter on August 6, 2025 indicating that it was disclosing certain discovery to defendant, and filed an additional letter on September 19, 2025, also indicating that it was disclosing discovery to defendant. *See* ECF Nos. 96, 116. Thus, the government may have subsequently "made clear" the locations of military training of which it is aware. However, the Court assumes, for the purpose of this motion, that this information has not yet been shared with the defense.

2000). The government shall provide such a bill of particulars within 30 days of the date of this Order.

### III.    Motion to Suppress Statements

Defendant argues that the Court should suppress statements made by her to federal agents or, in the alternative, hold an evidentiary hearing as to the admissibility of such evidence. ECF No. 77 at 4–5. Defendant made those statements to federal agents during two interviews that took place while defendant was in Syria—the first interview took place on November 11, 2023, and the second interview took place on May 6, 2024. ECF No. 77 at 9. Defendant argues that those statements were involuntary because the first interview took place in the presence of SDF agents who detained her for several years, and because the second interview took place on the eve of her repatriation flight. ECF No. 77 at 9–10. The government opposes, arguing that defendant was interviewed under accommodating, non-coercive conditions after she voluntarily waived her *Miranda* rights. Opp'n 50–51. The Court finds that the statements made by defendant during her interviews with federal agents were voluntary. Thus, defendant's motion is denied.

Statements made by criminal defendants subject to coercion are excluded from criminal proceedings pursuant to the due process clause. "[A]ll criminal defendants must be apprised of certain rights before a custodial interrogation may begin, including, of course, the right to remain silent and be afforded the assistance of counsel." *United States v. Plugh*, 648 F.3d 118, 125 (2d Cir. 2011) (citing *Miranda v. Arizona*, 384 U.S. 436 (1966)). Here, defendant concedes that she executed an advice of rights waiver and answered questions posed to her by the agents at both of her interviews. ECF No. 77 at 7–8. Thus, the inquiry before the Court is whether defendant's waiver of her rights under *Miranda* was knowing and voluntary. *Berghuis v. Thompkins*, 560 U.S. 370, 382 (2010).

To be "knowing," the waiver "must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *See Moran v. Burbine*, 475 U.S. 412, 421 (1986). To be "voluntary," the waiver must be "the product of a free and deliberate choice rather than intimidation, coercion, or deception[.]" *Berghuis*, 560 U.S. at 382. Here, defendant argues that her statements to federal agents were not made pursuant to a voluntary waiver.

When considering the voluntariness of statements made by a criminal defendant, and the voluntariness of a waiver of *Miranda* rights, the Court is to consider "the totality of all the surrounding circumstances," which includes the defendant's "background and experience, the conditions of [her] interrogation and the conduct of the law enforcement officers." *United States v. Ruggles*, 70 F.3d 262, 264–65 (2d Cir. 1995). To be valid, the government must prove voluntariness of a waiver of a defendant's rights by a preponderance of the evidence. *See United States v. Gaines*, 295 F.3d 293, 297 (2d Cir. 2002).

Defendant argues that her statements were involuntary for two main reasons: first, SDF agents' presence at her November 11, 2023 interrogation rendered her decision to answer questions posed by the FBI involuntary; and second, federal agents interviewed her on the eve of her repatriation, giving the impression that if defendant did not speak with them, that she would not be repatriated. ECF No. 77 at 9–10. These arguments are unavailing.

Defendant contends that the "only reasonable inference from being questioned immediately before travel is that if she did not speak," she would not be repatriated and reunited with members of her family. ECF No. 77 at 10. However, defendant does not explain why she believed that to be the case, if she did indeed believe that to be the case

at the time of her interview. She does not claim that she was told that if she did not speak with federal agents that she would not be repatriated or even that she assumed that her repatriation was conditioned on agreeing to speak with federal agents. Thus, she does not claim that the FBI agents who questioned her "in any way threatened, coerced, or tricked" her into giving a statement. *United States v. Yousef*, 327 F.3d 56, 126 (2d Cir. 2003).

Defendant's other argument, that her statements and waiver were not voluntary because of the presence of SDF agents at her first interview, fares no better. Defendant argues that because the conditions under which she was detained by the SDF were traumatic and dismal, that she necessarily could not have made voluntary statements or made a voluntary waiver of her rights in their presence. ECF No. 77 at 6, 9. However, while defendant argues that a waiver in the presence of SDF agents "can hardly be said to be the product of an essentially free and unconstrained choice by its maker," ECF No. 77 at 9, she does not actually articulate why their presence made her confession involuntary. She does not claim, for example, that she was afraid of some retaliation from the SDF if she did not waive her *Miranda* rights and speak with agents, nor does she connect her experiences in the detention camps to her inability to understand what was happening or a lack of actual choice in waiving her rights. Defendant's motion includes no mention of how the presence of SDF agents at her interview actually impacted her, or why their presence would make her statements or waiver involuntary.

Moreover, a signed waiver of rights under *Miranda* is strong proof of the validity of the waiver. *United States v. Martin*, No. 23-7507-cr, 2025 WL 2180611, at *1 (2d Cir. Aug. 1, 2025) (summary order) ("Generally, an express written or oral statement of waiver of the right to remain silent or of the right to counsel is usually strong proof of the validity

of that waiver."). However, a statement or a waiver of rights is involuntary if obtained under circumstances which "overbear the defendant's will at the time it is given." *Id.*

Here, defendant signed a waiver of her *Miranda* rights before each interview was conducted, and there is no suggestion that she did not understand the rights which she was giving up both times. Additionally, the circumstances of her interviews do not indicate that her waivers of her rights or her decision to speak with FBI officials was involuntary. During her first interview she was questioned for approximately 85 minutes, and during her second interview she was questioned for less than an hour. ECF No. 77 at 7–8. She does not allege that she was held or questioned for a particularly long time or subject to "repeated and prolonged" questioning, and she does not claim to have been subjected to any physical punishment such as deprivation of food or sleep. *See United States v. Amilcar*, No. 23-cr-00018, 2025 WL 2452415, at *9 (E.D.N.Y. Aug. 25, 2025). Photographs of the rooms where defendant was interviewed show rooms that appear to be clean with food and drinks provided. *See* Opp'n Ex. B, ECF No. 80-2; Opp'n Ex. D, ECF No. 80-4.[6]

Based on review of the totality of the circumstances surrounding defendant's interviews, the government has shown by a preponderance of the evidence that

---

[6]    Defendant has also failed to show that she is entitled to an evidentiary hearing on her motion to suppress statements she made to law enforcement. To warrant a hearing on a suppression motion, "a defendant must establish a disputed factual issue through sworn factual allegations from an individual with personal knowledge." *Amilcar*, 2025 WL 2452415, at *10. Unsubstantiated allegations are insufficient to create a factual issue requiring a hearing. *United States v. Harun*, 232 F. Supp. 3d 282, 285 (E.D.N.Y. 2017) ("It is well-settled that a hearing is not required if a defendant fails to support [her] factual allegations with an affidavit from a witness with personal knowledge."). Here, defendant did not submit sworn allegations about the circumstances of her interrogations by law enforcement. Thus, defendant's alternative request for a suppression hearing is denied.

defendant's waiver of her *Miranda* rights, and the statements she made while interviewed by law enforcement, were voluntary.

### IV.    CIPA Motion

Defendant argues that the government should be required to disclose unredacted copies of its filings made pursuant to Section 4 of CIPA to cleared defense counsel. ECF No. 71 at 3. The government objects. Defendant's motion is denied.

The issue before the Court regarding this motion is whether the Court can review classified information *ex parte* to make a discoverability determination. The decision whether to receive the government's CIPA 4 submission *ex parte* is within the discretion of this Court, and the purpose of the CIPA 4 submission is to determine whether any of the information at issue is discoverable.

CIPA establishes procedures for handling classified information in criminal cases and is designed to "protect and restrict the discovery of classified information in a way that does not impair the defendant's right to a fair trial." *United States v. Aref*, 533 F.3d 72, 78 (2d Cir. 2008). Section 4 of CIPA allows the government to delete, substitute, or summarize specified items of classified information before providing such items in discovery "upon a sufficient showing" that being required to produce the items would pose a reasonable danger to national security such that the documents fall within the state secrets privilege. 18 U.S.C. app. 3 § 4; *see also Aref*, 533 F.3d at 78–80. To make this determination, the Court must engage in several steps. First, the Court must determine whether the classified information in the government's possession is discoverable. *Aref*, 533 F.3d at 80. Second, if the information is discoverable, the Court must determine whether the state secrets privilege applies, by considering (1) if there is "a reasonable danger that compulsion of the evidence will expose matters which, in the interest of

national security, should not be divulged," and (2) that "the privilege is lodged by the head of the department which has control over the matter, after actual personal consideration by that officer." *Id*. Third, if the information is discoverable but privileged, the Court must determine whether "the information is helpful or material to the defense," which is a lower standard than articulated in *Brady v. Maryland*, 373 U.S. 83 (1963). *Id*.

These steps are generally undertaken by the Court through an evaluation of a submission made by the government *ex parte*. *See* 18 U.S.C. app. 3 § 4 ("The court may permit the United States to make a request for such authorization in the form of a written statement to be inspected by the court alone."). In the Second Circuit, *ex parte* consideration of CIPA motions is "the rule." *United States v. Zazi*, No. 10-cr-00060, 2011 WL 2532903, at *2 (E.D.N.Y. June 24, 2011). Nevertheless, as argued by defendant, the Court has the discretion to reject *ex parte* filings of CIPA 4 materials. ECF No. 71 at 3; *United States v. Abu-Jihaad*, No. 07-cr-00057, 2007 WL 2972623, at *2 (D. Conn. Oct. 11, 2007), *aff'd*, 630 F.3d 102 (2d Cir. 2010). Defendant argues that the Court should exercise such discretion here, and order that the government's unredacted CIPA 4 filing be disclosed to a member of the defense team that has the requisite security clearance. Defendant argues that defense counsel possesses the requisite security clearances and a "need-to-know." Reply 59. However, as the Second Circuit has observed, "where the government moves to withhold classified information from the defense, an adversary hearing with defense knowledge would defeat the very purpose of [CIPA's] discovery rules." *Abu-Jihaad*, 630 F.3d at 143. Courts within this Circuit have repeatedly held that defense counsel's security clearance does not entitle a defendant to disclosure of the government's classified submissions. *See United States v. Hossain*, No. 22-618-cr, 2024 WL 4212321, at *3 n.4 (2d Cir. Sept. 17, 2024) (summary order), *cert. denied*, 145 S. Ct.

2801 (2025) ("The status of defense counsel's security clearance is irrelevant because nothing in the text of § 4 limits the District Court's authority to review classified information *ex parte* only where defense counsel lacks a security clearance."); *United States v. Liu*, No. 19-cr-00804, 2021 WL 3374535, at *4 (S.D.N.Y. Aug. 3, 2021) ("That defense counsel holds a security clearance has no bearing on whether a district court may conduct its review *ex parte* and *in camera* pursuant to Section 4 of CIPA.") (collecting cases).

Thus, the Court declines to exercise its discretion to reject the government's *ex parte* submission of its CIPA 4 materials and joins the courts in this district that have considered CIPA 4 submissions made by the government *in camera* and *ex parte*. *United States v. Asainov*, 618 F. Supp. 3d 105, 113–14 (E.D.N.Y. 2022)

## CONCLUSION

For the reasons stated above, the Court GRANTS in part and DENIES in part defendant's motion for a bill of particulars. The government shall provide a bill of particulars consistent with this Order on or before November 26, 2025. Defendant's motions to dismiss the indictment, to suppress statements made by defendant in interviews with federal law enforcement, and to review the government's classified CIPA 4 submission are DENIED.

**SO ORDERED.**

   */s/ Natasha C. Merle*
NATASHA C. MERLE
United States District Judge

Dated:       October 27, 2025
             Brooklyn, New York