UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

*Plaintiff*,

– against –

HALIMA SALMAN,

*Defendant*.

FILED UNDER SEAL

**MEMORANDUM & ORDER**
24-cr-00206 (NCM)

**NATASHA C. MERLE**, United States District Judge:

Defendant Halima Salman is charged in a one-count indictment with receiving military-type training from a foreign terrorist organization in violation of 18 U.S.C. § 2339D(c)(1). *See* Indictment, ECF No. 13. Defendant moved to exclude a photograph of a military training document alleged by the government to demonstrate that defendant received such training. Mot., ECF No. 75.[1] The Court held oral arguments and an evidentiary hearing on defendant's motion. *See* Minute Entries for August 7, 2025, March 17, 2026, and March 18, 2026. On March 30, 2026, defendant moved to reopen the evidentiary hearing based on the government's late disclosure of facts about one of its

[1] The Court hereinafter refers to defendant's Motion to Exclude Evidence of a Photograph of a Fraudulent Document, ECF No. 75, as the "Motion to Exclude"; the government's Opposition to Defendant's Pretrial Motion, ECF No. 80, as the "Opposition"; defendant's Reply in Support of Pretrial Motions, ECF No. 87, as the "Reply"; defendant's Supplemental Letter in Support, March 30, 2026, ECF No. 153, as the "Supplemental Letter"; the government's Supplemental Letter in Opposition, April 6, 2026, ECF No. 157, as the "Supplemental Opposition."

witnesses. Mot. to Reopen, ECF. No. 154.[2] For the reasons set forth below, the motion to reopen is **DENIED** as moot, and the motion to exclude is **DENIED.**

## BACKGROUND

### I. Factual Background[3]

Defendant has been charged under 18 U.S.C. § 2339D for receiving military-type training from and on behalf of the Islamic State of Iraq and al-Sham ("ISIS"), a foreign terrorist organization. *See* Indictment 1.[4] The complaint alleges Salman "received military type-training from ISIS . . . regarding the handling and operation of an AK-47 or 'Kalashnikov' style assault rifle, in Syria." Compl. ¶ 2, ECF No. 1.

### II. Military Training Document

Central to the government's case is a photograph of a military training document ("Military Training Document" or "Document"). *See* Compl. ¶ 22, fig. 1. The Military Training Document is an Arabic-language document, comprised of a fillable pre-printed form and handwritten contents. *See* Compl. ¶ 22, fig. 1. The title of the document is: "Authorization to Grant a Weapon." Gov't Ex. 1-T. It states in relevant part, "To the brothers at *Diwan al-Jund*, . . . We inform you that sister *Um Khattab al-Mujahir*, the wife of brother *Abu Ali al-Almani al-Khorasani*, ID number: *12000845343*, has

---

2 The Court hereinafter refers to defendant's Motion to Reopen Evidentiary Hearing for Late Disclosure, ECF No. 154, as the "Motion to Reopen"; the government's March 27, 2026 disclosure letter regarding Saida Ismail, ECF No. 155, as the "*Giglio* Letter"; and the government's Response in Opposition to Defendant's Motion to Reopen, ECF No. 156, as the "Motion to Reopen Opposition."

3 The Court presumes familiarity with the factual background of the case and provides only the facts necessary to resolve defendant's motions at issue.

4 Throughout this Order, page numbers for docket filings refer to the page numbers assigned in ECF filing headers.

completed the military training and test and has earned the right to have:" one Kalashnikov and two magazines "in her possession," and one quiver (bag), two magazines, and 150 bullets to "be provided" to her. Gov't Ex. 1-T (italics denoting handwritten contents). The bottom right corner of the Document appears to be a logo in Arabic and transliterates to "Nusaybah bint-Ka'ab," Gov't Ex. 1-T, also referred to as the "Nusaybah Katiba," an all-female ISIS military unit, Compl. ¶¶ 23, 25; Mot. to Exclude 7–8. The Military Training Document is signed by an individual named Um Yousef. Gov't Ex. 1-T. "Um []Khattab al-Mujahir" is an alias—or "kunya"—alleged to belong to Salman. March 18, 2026 Evidentiary Hearing Transcript ("Mar. 18 Tr.") 285:23–25, ECF No. 159. The alias "Abu Ali al-Almani al-Khorasani" and the identification number on the Certificate allegedly belong to Salman's husband, Abu Ali.[5]

The photograph of the Military Training Document was recovered from the cell phone of Abu Ali, following his March 2019 arrest.[6] Opp'n 25–26. According to its metadata, the photograph was taken on March 17, 2018. Opp'n 92. The government alleges Salman completed military training at some time between July 23, 2017, and March 17, 2018—after Salman's marriage to Abu Ali and before the photo was taken. Mar. 18 Tr. 322:19–324:1; *see* Government Letter, Nov. 26, 2025 ("Nov. 26, 2025 Gov't Letter") 1, ECF No. 130. The government also alleges Salman completed the training in Syria but does not know where precisely. *See* Nov. 26, 2025 Gov't Letter 1–2, 2 n.1. The

5 As of the evidentiary hearing, the government did not have confirmation that the number belonged to Abu Ali. Mar. 18 Tr. 265:1–10.

6 Defendant argues that the chain of custody evidence for the Abu Ali cell phone is missing information, Mot. to Exclude 6 n.1, or omits information, Mot. to Exclude 6 n.2. However, breaks or gaps in the chain of custody generally go to the weight of the evidence, and "do not bear upon the admissibility of evidence." *United States v. Gonzalez*, 144 F.4th 396, 406 (2d Cir. 2025).

government does not possess the original Military Training Document. Declaration of John Maurer ¶ 7, ECF No. 107.

## III. Evidentiary Hearing

On March 17 and March 18, 2026, the Court held an evidentiary hearing pursuant to Federal Rule of Evidence ("FRE") 104(a) on defendant's motion to exclude the photograph of the Military Training Document. *See* Minute Entries for March 17, 2026 and March 18, 2026. The Court heard testimony from Mr. Hassan Hassan and Ms. Saida Ismail on behalf of the government, testimony from Dr. Khalil Barhoum on behalf of defendant, and extensive argument by counsel for both parties. *See generally* March 17, 2026 Evidentiary Hearing Transcript ("Mar. 17 Tr."), ECF No. 158; Mar. 18 Tr.

The government proffered Mr. Hassan as an expert on ISIS and ISIS's internal documents. Mr. Hassan testified to his knowledge of the structure, organization, and bureaucracy of ISIS. Mar. 17 Tr. 4:23–101:6. Ms. Ismail, also on behalf of the government, offered lay testimony of her experiences in ISIS-controlled Syria. Specifically, she claimed to have personally witnessed women join Nusaybah Katiba, fill out and receive Nusaybah Katiba paperwork and documentation, and receive Nusaybah Katiba trainings. Mar. 17 Tr. 102:4–205:10.

Defendant proffered Dr. Barhoum as an expert in Arabic calligraphy. He testified that the signatures on the Military Training Document and two comparators, purportedly belonging to Um Yousef, were not signed by the same person. Mar. 17 Tr. 207:2–257:8.

## IV. Subsequent Procedural History

Ten days after Ms. Ismail testified at the evidentiary hearing, the government disclosed post-hearing statements she made pursuant to its obligation under *Giglio v. United States*. 405 U.S. 150 (1972) (holding the Due Process Clause requires that the

prosecution's obligation to disclose exculpatory information under *Brady v. Maryland* extends to information affecting the credibility of a government witness); *see Giglio* Letter. Defendant subsequently filed a motion to reopen the evidentiary hearing to cross-examine Ms. Ismail. Mot. to Reopen 1. Defendant contends that the government's late disclosure contained statements that contradict Ms. Ismail's prior statements to law enforcement and at the evidentiary hearing, thereby impacting her credibility. The parties also filed supplemental letters to support their respective positions on defendant's motion to exclude. *See generally* Supp. Letter; Supp. Opp'n.

## DISCUSSION

Before the Court are defendant's motions to exclude the photograph of the Military Training Document and to reopen the evidentiary hearing. The Court addresses defendant's motion to reopen before turning to her motion to exclude.

## MOTION TO REOPEN EVIDENTIARY HEARING

Defendant seeks to reopen the evidentiary hearing on its motion to exclude, arguing Ms. Ismail's post-hearing statements contradict her prior statements made during law enforcement interviews[7] and hearing testimony. Mot. to Reopen 1. The *Giglio* Letter, defendant contends, directly affects the credibility of the witness, and timely disclosure would have fundamentally altered her cross-examination. Mot to Reopen 1. The government disagrees. It argues that the *Giglio* Letter does not contradict Ms. Ismail's hearing testimony, and notes that defendant has failed to state precisely how

---

[7] Prior to Ms. Ismail's testimony on March 17, 2026, the government produced 3500 materials that included law enforcement notes and reports from interviews with Ms. Ismail conducted between February 17, 2020, through November 21, 2025. *See* Sealed Order Approved Ex. B (Government Exhibit 3500-SI-001 ("Ismail 3500")), ECF No. 142-1.

knowledge of Ms. Ismail's statements would have altered cross-examination. Mot. to Reopen Opp'n 1. The government adds that it does not need Ms. Ismail's testimony to authenticate the photograph of the Military Training Document. Mot. to Reopen Opp'n 2.

The central question is whether Ms. Ismail's hearing testimony should be credited, and if so, whether her testimony impacts the Court's exclusion of the Military Training Document. For the reasons discussed below, the Court declines to rely on Ms. Ismail's testimony in making its determination of whether to exclude the Military Training Document. Thus, defendant's motion to reopen the evidentiary hearing is denied as moot. *See United States v. Person*, 745 F. App'x 380, 382 (2d Cir. Aug. 14, 2018) (affirming denial of motion to reopen evidentiary hearing based on district court's finding that additional evidence would not impact its witness credibility determination); *see also United States v. Salameh,* 54 F. Supp. 2d 236, 248 (S.D.N.Y. 1999), *aff'd,* 16 F. App'x. 73 (2d Cir. 2001) ("If the moving papers themselves disclose the inadequacies of [a] case, and the opportunity to present live witnesses would clearly be unavailing, the court may rest its decision solely on the basis of the affidavits and memoranda submitted and need not resort to an evidentiary hearing.").[8]

"Credibility determinations are the province of the trial judge." *In re Terrorist Bombings of U.S. Embassies in E. Africa*, 552 F.3d 177, 210 (2d Cir. 2008). Adverse credibility determinations are appropriately based on witness omissions, contradictory evidence, or inherently improbable testimony. *See United States v. Gillespie,* 264 F. Supp. 3d 462, 468–69 (W.D.N.Y 2017) (denying reconsideration of negative assessment of the defendant's credibility based on the omission of salient facts between defendant's sworn

---

[8] Throughout this Order, the Court omits all internal quotation marks, footnotes, and citations, and adopts all alterations, unless otherwise indicated.

affidavit and evidentiary hearing testimony, and observing that "[c]ourts often determine the credibility of a witness based on omissions between motion papers and hearing testimony"); *United States v. Andrews*, No. 20-cr-00285, 2022 WL 2301987, at *3 (E.D.N.Y. June 27, 2022) (discrediting witnesses testimonies as implausible where the witnesses claimed to have observed the defendant's hand motion while defendant was standing behind a wrought-iron fence, at least 168 feet away, and in a poorly lit area).

The government proferred Ms. Ismail to authenticate the Military Training Document. Mar. 18 Tr. 269:24–270:8. Ms. Ismail testified that she became familiar with Nusaybah Katiba documents by visiting the Katiba office, and by observing friends and other women sign up for the Katiba, fill out Katiba forms, and receive Katiba ID cards and other documents. Mar. 17 Tr. 103:9–104:2, 105:24–106:6. Based on these first-hand experiences, Ms. Ismail testified that the documents she reviewed during the hearing, including the Military Training Document, "look[ed] like authentic Islamic State documents to [her]." Mar. 17 Tr. 111:19–112:13. She testified that the "[t]he format [of the Military Training Document] is the same as the ones that I've seen my friends have, as well as the *raqem al-thateea* which is the number that each person is given in the Islamic State. So, it looks authentic to me." Mar. 17 Tr. 116:2-11.

Ms. Ismail's testimony omits salient information that would have bolstered the basis of her personal knowledge of Nusaybah Katiba documents, information that was only disclosed after the hearing. The *Giglio* Letter states Ms. Ismail accompanied her husband on patrols with the Hisbah, ISIS's police force which enforces ISIS law against women. *Giglio* Letter 1. Ms. Ismail states she "was present when women were detained for carrying a weapon without proper authorization." *Giglio* Letter 2. She also "saw the documents [women] presented" and "observed the Nusaybah Katiba logo on some of the

documents." *Giglio* Letter 2. On some occasions, Ms. Ismail's husband identified women with Katibah documents for her, telling her "they have the Nusaybah Katiba documents." *Giglio* Letter 2. The Letter indicates Ms. Ismail was present while documents similar to the Military Training Document were being reviewed and evaluated. These omissions from her hearing testimony are surprising because she was questioned about her familiarity with Nusaybah Katiba documents, including weapons authorization documents. *See, e.g.*, Mar. 17 Tr. 105:11–106:3, 110:17–113:8, 115:23–116:19. Ms. Ismail's post-hearing statements and their omission from the law enforcement interview reports and evidentiary hearing testimony raise concerns about her credibility.

Ms. Ismail's after the fact recall of her experiences with Nusaybah Katiba weapons authorization forms is particularly curious because the omission concerns a matter material to the basis of her personal knowledge. Yet, neither the law enforcement interview reports covering a span of five years (including one interview in which Ms. Ismail discussed the role of the Hisbah contemporaneous with a Nusaybah Katiba training document, Ismail 3500 at 15), nor Ms. Ismail's evidentiary hearing testimony, make any mention of her experience accompanying her husband as he evaluated Nusaybah Katiba weapon authorization forms. Mar. 17 Tr. 102:4–205:10; Ismail 3500 *passim*. The Court finds it "inherently improbable" that a reliable witness would omit such salient and highly relevant information about the subject matter of her testimony. *See United States v. Lawson*, 961 F. Supp. 2d 496, 505 (W.D.N.Y. 2013) (declining to

reverse a magistrate judge's credibility determination). As such, Ms. Ismail's omissions raise profound questions about her credibility.[9]

Thus, the Court declines to rely on Ms. Ismail's testimony and further questioning of the witness is unnecessary. Accordingly, defendant's motion to reopen the evidentiary hearing is denied as moot.

## MOTION TO EXCLUDE

Defendant moves to exclude the government's photograph of the Military Training Document. Defendant argues that the government cannot authenticate the Document, nor can it overcome the bar against hearsay.[10]

---

9 Indeed, Ms. Ismail's cross-examination revealed numerous omissions that bore on her credibility. *E.g.*, Mar. 17 Tr. 166:12–17 (Ms. Ismail testifying that despite having spoken to the FBI many times, she never informed them that she witnessed a Nusaybah Katiba training); Mar. 17 Tr. 189:14–18, 197:23–198:18 (Ms. Ismail testifying that every time she spoke to FBI agents in the preceding six years about Allison Fluke-Ekren she always referred to Fluke-Ekren with the kunya Um Muhammad al-Amriki, but when she met with the prosecution on the eve of the evidentiary hearing (March 15–16, 2026) she recalled Fluke-Ekren also used the kunya Um Yousef, which is the same kunya as the signatory to the Document at issue in the case).

10 Defendant argues two additional grounds to exclude the Military Training Document: (1) the best evidence rule pursuant to Rules 1002, 1003, and 1004, and (2) the risk of unfair prejudice under Rule 403. Mot. to Exclude 14–16, 27. First, defendant argues that the Document is inadmissible under the best evidence rule, which requires the production of an original document to prove its contents. Mot. to Exclude 14; Fed. R. Evid. 1002; *see also Crawford v. Tribeca Lending Corp.*, 815 F.3d 121, 126–27 (2d Cir. 2016) (explaining the best evidence rule). Because the Document provided by the government is neither the original document nor an admissible duplicate and because the government has not established the unavailability of the original, defendant argues it must be excluded. Mot. to Exclude 14–16. The Court finds that the photograph of the Military Training Document is admissible as a duplicate under Rule 1004, which dictates that "[a]n original is not required and other evidence of the content of a writing, recording, or photograph is admissible if . . . all the originals are lost or destroyed, and not by the proponent acting in bad faith." Fed. R. Evid. 1004. The government satisfactorily explains that despite the steps taken by the FBI to locate the Military Training Document in paper or digitized form, the government could not obtain the original. Maurer Decl. ¶¶ 7–9. As discussed below, the Court finds that the Document has been authenticated, and thus not

"Evidence should be excluded on a motion in limine only when the evidence is clearly inadmissible on all potential grounds." *United States v. Watts*, 934 F. Supp. 2d 451, 462 (E.D.N.Y. 2013) (italics omitted) (quoting *United States v. Paredes*, 176 F. Supp. 2d 179, 181 (S.D.N.Y. 2001)). "[C]ourts considering a motion in limine may reserve judgment until trial, so that the motion is placed in the appropriate factual context." *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 643 F. Supp. 2d 471, 476 (S.D.N.Y. 2009).

## I. Authentication

"Federal Rule of Evidence 901 governs the authentication of evidence and 'is satisfied if sufficient proof has been introduced so that a reasonable juror could find in favor of authenticity or identification.'" *United States v. Moses*, 109 F.4th 107, 113 (2d Cir. 2024) (quoting *United States v. Al-Moayad*, 545 F.3d 139, 173 (2d Cir. 2008)). "The standard for authentication is one of 'reasonable likelihood' and is 'minimal.'" *Lakah v. UBS AG*, 996 F. Supp. 2d 250, 255 (S.D.N.Y. 2014) (quoting *United States v. Gagliardi,* 506 F.3d 140, 151 (2d Cir. 2007)). "[P]roof of authentication may be direct or circumstantial." *Moses*, 109 F.4th at 113.

"To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). The Rule sets forth non-exhaustive examples of evidence that satisfy the authentication requirement. Relevant here, the

barred by Rule 1003. Fed. R. Evid. 1003 (providing "duplicate is admissible to the same extent as the original unless a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate"). Additionally, the Court finds that the risk of unfair prejudice does not outweigh the probative value of the Military Training Document, which is highly relevant to the charged crime.

proponent may rely on (1) a witness with knowledge, Fed. R. Evid. 901(b)(1); (2) a "comparison with an authenticated specimen by an expert witness or the trier of fact," Fed. R. Evid. 901(b)(3); or, (3) "appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances," Fed. R. Evid. 901(b)(4). After the proponent adduces sufficient evidence to authenticate, "the opposing party remains free to challenge the reliability of the evidence, to minimize its importance, or to argue alternative interpretations of its meaning, but these and similar other challenges go to the *weight* of the evidence—not to its *admissibility*." *United States v. Vayner*, 769 F.3d 125, 131 (2d Cir. 2014).

Here, the government provides sufficient circumstantial evidence to support the conclusion that there is a reasonable likelihood that the Document is what the government purports it to be: a picture of a Nusaybah Katiba training document.[11] To authenticate the Military Training Document, the government provided Mr. Hassan as a witness who placed the weapons authorization form in context. Specifically, he testified that ISIS requires an official weapons authorization form to regulate weapons possession and ensure that only ISIS members carry weapons. Mar. 17 Tr. 35:15–37:6, 44:06–45:18. Mr. Hassan also testified to the distinctive characteristics of the Military Training Document, principally that the pre-printed form could only be obtained through official ISIS channels and bore attributes typical of ISIS paperwork. Mar. 17 Tr. 40:1–25. He also

---

[11] In framing the Military Training Document as being offered as "a genuine, ISIS-issued certification that [defendant] did in fact complete military training in Syria," Mot. to Exclude 17, defendant argues for a heightened bar to admissibility. At this stage, the veracity of the Document is not a part of the Court's analysis. *See United States v. Hamilton*, 334 F.3d 170, 186–87 (2d Cir. 2003) ("Once [evidence] has been sufficiently authenticated, any question as to [its] veracity . . . and . . . credibility . . . goes to the evidence's weight rather than to its admissibility.").

testified that contrary to defendant's contention, similar documents commonly lack a stamp. Mot. to Exclude 23; Mar. 17 Tr. 38:4–39:11 (Mr. Hassan testifying that he reviewed "thousands" of ISIS documents with stamps and "hundreds" of ISIS documents without stamps); *compare* Gov't Ex. 2 (not stamped), *with* Gov't Ex. 6 (stamped).

Further, on its face, the Document appears similar to other ISIS weapons authorization documents. Based on a visual analysis of seven comparators provided by the government, the Court finds that the Military Training Document depicted in the photograph differs only in the hand-written portions and, with respect to six of the comparators, differs in whether it bears a stamp. *Compare* Gov't Ex. 1, *with* Gov't Exs. 2–8. Importantly, defendant does not dispute the authenticity of the comparators, nor the template language found across all eight training documents. Mar. 18 Tr. 284:13–25 (discussing comparators found on ISIS hard drive as, to some extent, "self-authentica[ing]"), 293:11–23 (agreeing that the underlying template itself is more likely than not authentic).

Defendant argues that even if the Court were to find that the template was authentic, the handwritten portion of the Document is not authentic because it is a fake. *See* Mot. to Exclude 17, 23–24. Defendant contends that anyone could have forged the Military Training Document, and in fact, defendant's husband had incentive to forge it. Mot. to Exclude 22–23. In support, defendant offers the testimony of Dr. Barhoum, who identified inconsistencies in the Um Yousef signature on the Military Training Document and those on the two comparators, Mar. 17 Tr. 224:2–20; Gov't Exs. 6 & 7.

None of defendant's arguments move the needle in her favor, however, because "[t]he focus of Rule 901 is on whether the item of evidence (be it genuine or fake) is what the party claims it to be." *United States v. Oreckinto*, 234 F. Supp. 3d 360, 364–65 (D.

Conn. 2017). Here, the government purports the evidence to be a photograph of a Nusaybah Katiba training document. Any assertion that the Document is genuine or a fake goes towards the "persuasive force" of the Document, and not [its] admissibility. *United States v. Tin Yat Chin*, 371 F.3d 31, 38 (2d Cir. 2004); *see United States v. Moldonado-Rivera*, 922 F.2d 934, 957–58 (2d Cir. 1990) (finding document properly authenticated because its "appearance, contents, substance, timing, and provenance, together with other evidence" suggested it was what the declarant purported it to be, notwithstanding defendants' argument that the document's logo could have been placed on the document by someone outside the conspiracy, because that argument went "more to the weight of the evidence than to its admissibility"). The "persuasive force" of the Military Training Document, then, does not bear on its authenticity and is appropriately a decision for the jury. *Tin Yat Chin*, 371 F.3d at 38.

Taking all the circumstantial evidence together, the Court finds that the government has met the low threshold required to authenticate the photograph of the Military Training Document under Rule 901. *See Al-Moayad*, 545 F.3d at 172–73.

## II. Hearsay Statement

Defendant argues that, authentication notwithstanding, the Military Training Document is inadmissible hearsay because the government seeks to introduce it for the truth of the matter asserted: that defendant received military training from Nusaybah Katiba. Mot. to Exclude 25–27. The government contends that the Military Training Document is not hearsay, invoking Rule 801(b)(2)(E)—the coconspirator statement exclusion—because it is being offered against defendant and was made by defendant's coconspirator during and in furtherance of a conspiracy to provide material support to

ISIS.[12] Opp'n 90–95. In response, defendant argues that the government cannot invoke the coconspirator statement exclusion because it has offered no proof of the identity of Um Yousef (defendant's alleged coconspirator), or even that she exists. Reply 54. Therefore, defendant concludes, the government cannot establish that defendant was in a conspiracy *with* Um Yousef as is required by Rule 801(b)(2)(E). Reply 54.[13]

Under FRE 801(b)(2)(E), a statement is not hearsay if it is offered against an opposing party and "was made by the party's coconspirator during and in furtherance of the conspiracy." Fed. R. Evid. 801(b)(2)(E). To admit statements under this rule, the Court must find by a preponderance of the evidence that (1) there was a conspiracy, (2) that its members included the declarant and the party against whom the statement is offered, and (3) that the statement was made during the course of and in furtherance of the conspiracy. *United States v. Adelekan*, 567 F. Supp. 3d 459, 466 (S.D.N.Y. 2021). "In determining the existence and membership of the alleged conspiracy, the court must

---

[12] The government also argues that the statement is admissible under the residual hearsay exception because it is sufficiently trustworthy. Opp'n 95–96. Because the Court finds that the statement is conditionally admitted as a coconspirator statement, it does not express any opinion on this argument.

[13] At the outset, the Court rejects defendant's argument that *Al-Moayad* is "dispositive," Reply 54, and "requir[es] exclusion of the photograph of the [D]ocument," Mot. to Exclude 26. In that case, the Second Circuit faulted the district court for making "no findings, by a preponderance of the evidence or otherwise, about the existence of a conspiracy including [the defendant] and the [declarant]." *Al-Moayad*, 545 F.3d at 173. Thus, the very fact that the Court is engaging in the following analysis distinguishes this case. Moreover, in *Al-Moayad*, the Second Circuit found that the record below contained insufficient circumstantial evidence to establish the defendant's involvement in the conspiracy outside of the appearance of his name on the hearsay document itself. *Id*. at 173–74. Here, as discussed below, there appears to be sufficient corroborating evidence to render the Document admissible. Finally, the Court notes that unlike *Al-Moayad*, in which the document was admitted "without limitation[—or explanation—]as substantive evidence," *id*. at 167 n. 24, here, the Court is conditionally admitting the Document while expressing no opinion on how it may explain or limit the evidence at trial.

consider the circumstances surrounding the statement, as well as the contents of the alleged coconspirator's statement itself." *United States v. Gupta*, 747 F.3d 111, 123 (2d Cir. 2014). "[S]tatements proffered as coconspirator statements may be admitted in evidence on a conditional basis, subject to the later submission of the necessary evidence" of each element. *United States v. Tracy*, 12 F.3d 1186, 1199 (2d Cir. 1993) (citing *United States v. Geaney,* 417 F.2d 1116, 1120 (2d Cir. 1969).[14]

A. Existence of a Conspiracy

To determine "whether a conspiracy existed under Rule 801(d)(2)(E), the key is coordinated action." *United States v. Musaibli*, 42 F.4th 603, 615 (6th Cir. 2022); *see* 30B Wright & Miller's Federal Practice & Procedure § 6778 (2026 ed.) ("For purposes of Rule 801(d)(2)(E), the goal of the identified conspiracy need not be criminal or even illicit . . . The key is coordinated action."). That said, the government must do more than describe the conspiracy in broad or general terms; the alleged conspiracy must have a specific goal. *United States v. Gigante*, 166 F.3d 75, 82–83 (2d Cir. 1999) ("[The district court found] that there [wa]s a general overriding conspiracy among . . . these alleged Mafia groups . . . [and] then admitted some evidence under Rule 801(d)(2)(E) based solely on this finding of a general conspiracy. This was error."). While the hearsay statement itself "may be considered in establishing the existence of the conspiracy," *Al-Moayad*, 545 F.3d at 173, "there must [also] be some independent corroborating evidence of the defendant's participation in the conspiracy." *Gigante,* 166 F.3d at 82. Finally, "the alleged conspiracy" for purposes of Rule 801(d)(2)(E) "need not be the same as the one

[14] Here, because the court admits the Military Training Document into evidence conditionally, the government may not refer to it in its opening statement. *See United States v. Fox*, No. 23-cr-00227, 2025 WL 2076664, at *18 (E.D.N.Y. July 23, 2025).

charged." *Musaibli*, 42 F.4th at 615. "In fact[,] there need not even be a conspiracy charge" for a party to invoke the Rule. *Id.*

Here, the government submits that at trial it will establish the existence of a conspiracy to provide material support to ISIS. Opp'n 93. The Military Training Document, which is an authorization to receive, possess, and carry weapons and ammunition and is specifically granted by Nusaybah Katiba, a military unit of ISIS, is consistent with the existence of such a conspiracy. The government's witness, Mr. Hassan, testified that a document like the Military Training Document signals to other members of ISIS that a weapon possessed by the recipient of the Document is "a legitimate weapon" that is "registered with ISIS," and that the recipient of the Document is authorized to carry it. Mar. 17 Tr. 44:9–45:1. Mr. Hassan also testified that ISIS controls its territory "with violence" via "law enforcement means" such as the use of "police . . . [and] military." Mar. 17 Tr. 35:8–14. Considering the Military Training Document itself, along with Mr. Hassan's testimony, the Court finds the government has preliminarily carried its burden to establish the existence of "coordinated action," *Musaibli*, 42 F.4th at 615, to materially support ISIS.

B. <u>Participation of the Defendant and the Declarant in the Conspiracy</u>

Next, the government contends that defendant and the declarant, Um Yousef, are members of the conspiracy. Opp'n 94. Defendant argues that the government falls short on this point because it has proffered no evidence that defendant was in a conspiracy with Um Yousef. Mot. to Exclude 26–27. Indeed, defendant argues, there is not any evidence showing that Um Yousef is an identifiable person at all. Reply 54.

The government "must demonstrate by a preponderance of the evidence . . . the existence of a conspiracy between the declarant and the party" against whom the

statement is offered. *United States v. Gasperini*, No. 16-cr-00441, 2017 WL 3140366, at *5 (E.D.N.Y. July 21, 2017), *aff'd*, 729 F. App'x 112 (2d Cir. 2018). The proponent "may rely on the contents of the coconspirator statements" to show that the declarant was a coconspirator of the defendant. *Musaibli*, 42 F.4th at 615. However, because "hearsay statements are presumptively unreliable," for such statements to be admissible, the government must offer "some independent corroborating evidence of the defendant's participation in the conspiracy." *United States v. Tellier,* 83 F.3d 578, 580 (2d Cir. 1996). As discussed in more detail below, the government has also preliminarily satisfied this element.

*1. Defendant*

To show defendant is a member of the conspiracy, the government submits it will offer the Military Training Document itself, along with photos of defendant in front of an ISIS flag, a video of defendant carrying an AK-47 the government purports was in her possession, and defendant's Mirandized statements in which she identifies her kunya on the Military Training Document.[15] Opp'n 93, 33-37 (discussing content of Mirandized statements). Additionally, the government argues that the circumstances of defendant's arrest in Baghouz—which occurred only two days before ISIS fell to the Syrian Democratic Forces ("SDF"), despite the fact that she had been given multiple opportunities to surrender and evacuate—support the conclusion that she was in a conspiracy to provide material support to ISIS. Opp'n 93 & n.25.

The Court finds that the Military Training Document, which bears defendant's kunya, along with corroborating evidence of defendant's participation in the conspiracy,

---

[15] The Court notes that this evidence was not submitted at the March 17 and 18 evidentiary hearing and will need to be presented at trial.

for example, the photographs, statements, and circumstances of her arrest, would be adequate to meet the preponderance of the evidence standard.[16]

Defendant's contention that she has never seen the Military Training Document is unavailing. The question is whether defendant participated in a conspiracy to provide material support to ISIS, not whether she was aware of the statement by an alleged coconspirator that supports that she was. Further, coconspirator statements can be offered against a defendant even if the defendant was unaware of the particular statement, and indeed even if the statement does not implicate the defendant in the conspiracy at all. *See United States v. Napout*, No. 15-cr-00252, 2017 WL 6375729, at *2 (E.D.N.Y. Dec. 12, 2017) ("So long as the government establishes that a statement was made by a coconspirator of a defendant during and in furtherance of a conspiracy in which both the defendant and the coconspirator were involved, the statement is admissible under FRE 801(d)(2)(E), even if the statement does not relate specifically to the defendant."). And here, in addition to the evidence discussed above, the Military Training Document was found on a phone belonging to defendant's husband, a known member of ISIS, after he was captured by SDF. Opp'n 31 & n.5; Reply 49. These facts are undisputed and appear to further connect defendant to the alleged conspiracy. *See* Reply 49 ("Salman has never

---

16 While the government does not raise this point explicitly, it has put forward evidence that "ISIS fighters and supporters choose [kunyas] for themselves," Opp'n 45 n.11; *see* Mar. 17 Tr. 50:4–7, that kunyas are "approved by ISIS," Mar. 17 Tr. 50:6, and that defendant's kunya, "Um Khattab al-Muhajir" contains the phrase "al-Muhajir," further supporting the conclusion that defendant was a participant in the conspiracy to provide material support to ISIS. Opp'n 23 ("'Al-Muhajir' means 'foreign fighter,' and, along with the plural 'muhajireen,' is a common term used by ISIS to refer to individuals who traveled from outside ISIS territory to ISIS territory to join ISIS as fighters."); *see* Mar. 17 Tr. 50:25–51:07 ("Q: And what does the kunya Um Khattab al-Muhajir mean? A: The mother of Khattab, the immigrant. And in this case, basically a foreign fighter who joined ISIS.").

argued that the phone is not her husband's. It self-evidently is."). Thus, the purported corroborating evidence preliminarily shows defendant's participation in the conspiracy.

2. *The Declarant*

Defendant argues that the government has not established that Um Yousef was a member of the conspiracy, and that there is insufficient corroborating information linking Um Yousef to defendant. Mot. to Exclude 26–27; Reply 54. At the outset, the government disputes that the evidence on this point is insufficient. Mar. 18 Tr. ("[Y]ou heard evidence at the [March 17] hearing that there was a particular person named Um Yousef who [] could have been [the person who signed the Military Training Document]."). And in any case, the government contends, statements by a member of the conspiracy can be admitted even if their precise author cannot be identified. Mar. 18 Tr. 301:14–303:13; *see* Supp. Opp'n 2.[17]

Defendant responds that the government's claim that coconspirator statements could be admitted "even if their precise author cannot be identified at all" is incorrect. Supp. Letter 1. Defendant distinguishes the cases relied on by the government, asserting that case law establishes that a declarant "need not always be identified by name, but only . . . where the declarant's identity, role, and connection to the conspiracy are effectively established through independent evidence and context." Supp. Letter 2 (citing *Pappas v. Middle Earth Condominium Ass'n*, 963 F.2d 534 (2d Cir. 1992), *United States v. Boothe*, 994 F.2d 63 (2d Cir. 1993), *United States v. Lyons*, 740 F.3d 702 (1st Cir. 2014),

---

[17] The government also argues that even if the Military Training Document were unsigned, the Court could still find that the declarant who filled out the form was a coconspirator acting in furtherance of the conspiracy. Mar. 18 Tr. 319:20–320:2. The Court, however, declines to reach this hypothetical argument based upon speculative facts.

*United States v. De Gudino*, 722 F.2d 1351 (7th Cir. 1983), *United States v. Mouzin*, 785 F.2d 682 (9th Cir. 1986), and *United States v. Smith*, 893 F.2d 1573 (9th Cir. 1990)).

The Court disagrees with defendant's reading of the cases. "[A] statement may be nonhearsay within the meaning of Rule 801(d)(2)(E) even though declarant is unidentified." *Boothe*, 994 F.2d at 69 (citing *United States v. Cruz*, 910 F.2d 1072, 1081 n. 10 (3d Cir. 1990)). That is because a link between an unidentified declarant, defendant, and the alleged conspiracy may nevertheless be found based on circumstantial evidence. *See Lyons*, 740 F.3d at 719 ("Records that can be shown by a preponderance of the evidence to have been made by a member of a conspiracy may be admitted under Rule 801(d)(2)(E) even if their precise author cannot be identified."); *see also De Gudino*, 722 F.2d at 1355–56 (affirming the admission of a ledger even though the author was unknown because "the contents" of that ledger clearly illustrated that "the[] author was familiar with the workings of the conspiracy"). Accordingly, the Document's admissibility for purposes of the coconspirator exclusion does not rise or fall with the government's ability to identify a specific Um Yousef. Rather, it depends on the evidence linking the signatory of the document to the conspiracy.[18]

Here, the circumstantial evidence appears to support by a preponderance that the statements contained in the Military Training Document were made by someone involved in the conspiracy. First, Mr. Hassan testified as to who had access to such pre-printed

---

[18] The Court notes on this point that it finds the fact that "Um Yousef" signed the Military Training Document as well as two comparator documents of minimal probative value given the government's representations that "that Um Yousef was a common name" and that "there are many Um Yousefs." Mar. 18 Tr. 319:06–14 ("We think it's probably the case that the three signatures are the same, but it does not matter. It could be two different Um Yousefs, three different Um Yousefs."); *see also* Mar. 17 Tr. 224:2–20 ("My only conclusion is [the signature on the Military Training Document] looks pretty different from these [signatures on the comparators].").

forms and where they could be obtained. Specifically, Mr. Hassan testified that "[o]nly ISIS issued" the pre-printed form and that such a form could have only been acquired through ISIS's official bureaucratic channels, including being available at specific ISIS locations. Mar. 17 Tr. 39:15–40:25. Put differently, the Military Training Document contained at least some "information that would only have been available to someone in the . . . conspiracy that was [ISIS]." *Lyons*, 740 F.3d at 719. This suggests that the person who signed and/or completed the form had access to ISIS bureaucratic channels and knew how to obtain official ISIS documents.

Second, the purpose of the Military Training Document was to signal to the ISIS Department of Soldiers that its recipient may rightfully receive weapons and ammunition. Specifically, the Military Training Document states that the recipient has completed military training, and authorizes the recipient to receive, carry, and possess weapons and ammunition. Gov't Ex. 1-T; *see* Mar. 17 Tr. 49: 17–22, 51:8–52:11 (Mr. Hassan translating the Military Training Document into English). Given Mr. Hassan's testimony that the ISIS Department of Soldiers kept records of "[a]nything related to military matters" including "numbers and names [of those] who joined them" and "details about weapons and which soldier has what," Mar. 17 Tr. 36:13–24, that ISIS controls its territory "with violence" via "law enforcement means" such as "police . . . [and] military," Mar. 17 Tr. 35:08–14, and more broadly that ISIS "only allows people who are part of [ISIS] to carry weapons," Mar. 17 Tr. 46:07–08, it appears that the declarant completed the form to assist ISIS's military recordkeeping efforts. In other words, the declarant prepared the Military Training Document "to maintain information necessary to continue the [] activities of the conspiracy." *De Gudino*, 722 F.2d at 1356.

Thus, the Military Training Document, along with the corroborating evidence described above, preliminarily shows the declarant's participation in the conspiracy.

C. <u>During the Course of and in Furtherance of the Conspiracy</u>

The "during the course of" prong requires the declarant's statement to be "made while the conspiracy is active: after its formation and before its cessation." *United States v. Saneaux*, 392 F. Supp. 2d 506, 515 (S.D.N.Y. 2005) (citing *United States v. Grossman,* 843 F.2d 78, 83 (2d Cir. 1988)). The "in furtherance" prong requires the statements to be "designed to promote or facilitate achievement of the goals of th[e] conspiracy," *United States v. Rivera*, 22 F.3d 430, 436 (2d Cir. 1994), by, for instance, "provid[ing] reassurance, or seek[ing] to induce a coconspirator's assistance, or serv[ing] to foster trust and cohesiveness[.]" *United States v. Maldonado-Rivera*, 922 F.2d 934, 959 (2d Cir. 1990).

Here, the Military Training Document was created during the course of the conspiracy. Based on the metadata of the photo, the government dates the Military Training Document as originating between July 2017 and March 2018. Mar. 18 Tr. 322:19–324:2; Opp'n 92. That means the Document was created after the formation of the Nusaybah Katiba, Opp'n 21 ("In or around late 2016, ISIS approved the creation of the Nusaybah Katiba."), and while the conspiracy was ongoing, Mar. 17 Tr. 30:13–31:10 (describing ISIS's "peak" in 2014-15 and gradual loss of territory in 2018-19). And during that period, similar Military Training Documents were produced, including those by Nusaybah Katiba. *See* Gov't Ex. 5-T (dated Feb. 5, 2018); Gov't Ex. 6-T (dated Feb. 11, 2018); Gov't Ex. 7-T (dated Feb. 6, 2018); Gov't Ex. 8-T (dated Feb. 11, 2018). Thus, the evidence surrounding the Military Training Document preliminarily shows that it was created "during the course of" the conspiracy. *See United States v. Paredes*, 176 F. Supp.

2d 183, 190 (S.D.N.Y. 2001) ("Unless a conspirator produces affirmative evidence of withdrawal, his participation in a conspiracy is presumed to continue until the last overt act by any of the conspirators.").

Defendant attempts to avoid this conclusion by pointing out the fact that the Military Training Document is itself undated, posing a series of rhetorical questions about the government's evidence, and speculating that that evidence will be insufficient at trial. Reply 55. But because the Court makes only a preliminary determination on the admissibility of the Document, it declines to resolve issues that will be more clearly framed during trial. *Paredes*, 176 F. Supp. 2d at 188 (noting that conditionally admitted statements are "subject to a motion to strike if the Government fails to establish the existence of the foundational facts" at trial).

The preponderance of the evidence also appears to support that the Military Training Document was issued in furtherance of the conspiracy. Coconspirator statements may be "in furtherance" of the conspiracy if they "prompt the listener to respond in a way that facilitates the carrying out of criminal activity." *Id.* at 190. When analyzing this prong, "the touchstone is that the statement be designed to promote the accomplishment of the conspiracy's goals." *Saneaux*, 365 F. Supp. 2d at 500.

Here, the objective of the alleged conspiracy is to provide material support for ISIS via military means. As discussed above, the Military Training Document furthers the conspiracy by authorizing the Document recipient to possess and carry weapons and ammunition, thereby facilitating the organization and coordination of ISIS's military operations. Mr. Hassan testified that ISIS established a policy of requiring a weapons authorization to regulate the possession of weapons and ammunition and to ensure "only members of ISIS or people issued . . . guns by ISIS are allowed to carry [guns]." Mar. 17

Tr. 44:9–17. Indeed, according to Mr. Hassan, the reason ISIS chose "to create a document that acknowledged who was permitted to carry a weapon" was to restrict "anyone from carrying weapons unless they [were] members of ISIS." Mar. 17 Tr. 44:09–17. He also testified that ISIS generally kept records of "[a]nything related to military matters" including "numbers and names [of those] who joined them" and "details about weapons and which soldier has what." Mar. 17 Tr. 36:13–24.

Here, the Military Training Document facilitated distribution of a quiver (i.e., bag), magazines, and bullets to the Document holder. Gov't Ex. 1-T. It also appears that the Military Training Document assisted with recordkeeping related to the distribution of weapons and ammunition. Therefore, the government has put forth evidence to preliminarily demonstrate that the Military Training Document was made in furtherance of the conspiracy to provide material support to ISIS.

* * *

Accordingly, the Court declines to exclude the Military Training Document provided the government submits sufficient corroborating evidence to prove by a preponderance of the evidence that the Military Training Document is admissible as a coconspirator statement.

## CONCLUSION

For the reasons stated above, defendant's motion to reopen the evidentiary hearing is **DENIED** as moot, and defendant's motion to exclude the photograph of the Military Training Document is **DENIED**.

The Court is issuing the instant Memorandum and Order under seal because the Order contains quotations from materials filed under seal pursuant to the Protective Order in this case; specifically, the *Giglio* Letter. However, the Court will subsequently

issue a public version. If the government seeks to have any information from the Court's Order on defendant's motion to reopen, i.e., the *Giglio* Letter or the law enforcement interview notes and reports, *see* Ismail 3500, redacted from the public version, the government shall file a letter with the Court under seal specifying which passages they seek to have redacted and the legal basis for making such redactions on or before August 20, 2026.

**SO ORDERED.**

*/s/Natasha C. Merle*
NATASHA C. MERLE
United States District Judge

Dated: August 6, 2026
Brooklyn, New York