UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

– against –

HALIMA SALMAN

*Defendant.*

**MEMORANDUM & ORDER**
24-cr-00206 (NCM)

**NATASHA C. MERLE**, United States District Judge:

Defendant Halima Salman is charged in a one-count indictment with receiving military-type training from a foreign terrorist organization in violation of 18 U.S.C. § 2339D(c)(1). *See* Indictment 1, ECF No. 13. The Court has scheduled a jury trial to commence on October 13, 2026. *See* Minute Entry dated May 20, 2026. In advance of trial, the government submitted twelve motions in limine and defendant submitted six motions in limine. *See* Gov't's Mot.; Def.'s Mot.[1] For the reasons stated herein, the parties' motions are variously granted, denied, or reserved for later ruling. The Court will rule on the reserved motions in limine at or following the final pre-trial conference.

[1] The Court hereinafter refers to the government's Motion in Limine, ECF No. 187, as "Gov't's Mot."; defendant's Motion in Limine, ECF No. 185, as "Def.'s Mot."; defendant's Response in Opposition, ECF No. 192, as "Def.'s Opp'n"; and the government's Response in Opposition, ECF No. 193, "Gov't's Opp'n."

## LEGAL STANDARD

A district court's "inherent authority to manage the course of trials" encompasses ruling on motions in limine. *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984).[2] "The purpose of an in limine motion is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996). A district court should exclude evidence on a motion in limine "only when the evidence is clearly inadmissible on all potential grounds." *Picard v. Sage Realty*, Nos. 20-cv-10109, 20-cv-10057, 2021 WL 5826295, at *2 (S.D.N.Y. Dec. 8, 2021). "Courts considering a motion in limine may reserve judgment until trial so that the motion is placed in the appropriate factual context." *United States v. Morel*, 751 F. Supp. 2d 423, 428 (E.D.N.Y. 2010). Because a ruling on a motion in limine "is subject to change as the case unfolds," the district court's ruling "constitutes a preliminary determination in preparation for trial." *Busher v. Barry*, No. 14-cv-04322, 2019 WL 6895281, at *2 (S.D.N.Y. Dec. 18, 2019); *see Luce*, 469 U.S. at 41–42.

The Federal Rules of Evidence provide the framework for determining the admissibility of evidence. "As a general matter, all relevant evidence is admissible . . . unless specifically excluded." *United States v. Perez*, 387 F.3d 201, 209 (2d Cir. 2004) (citing Fed. R. Evid. 402). "[E]vidence is 'relevant' if it has 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" *United States v. Abu-Jihaad*, 630 F.3d 102, 132 (2d Cir. 2010) (quoting Fed. R. Evid. 401). Relevant

---

2 Throughout this Order, the Court omits all internal quotation marks, footnotes, and citations, and adopts all alterations, unless otherwise indicated.

evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice," *United States v. Bourne*, No. 08-cr-00888, 2011 WL 4458846, at *12 (E.D.N.Y. Sept. 23, 2011) (quoting Fed. R. Evid. 403), and irrelevant evidence is never admissible, Fed. R. Evid. 402.

## Discussion

### I. Government's Motions in Limine

The government has filed motions in limine to: (1) admit the defendant's statements as party-opponent admissions and preclude the defendant from introducing her own hearsay statements; (2) admit coconspirator statements made in furtherance of a conspiracy to obstruct justice; (3) admit coconspirator statements made in furtherance of a conspiracy to provide material support to the Islamic State of Iraq and al-Sham ("ISIS"), a foreign terrorist organization; (4) admit coconspirator statements by defendant's husband, Abu Ali, in furtherance of a conspiracy to provide material support to ISIS; (5) preclude evidence or argument regarding the existence or absence of classified information as irrelevant; (6) admit evidence of ISIS affiliation and propaganda from defendant's husband's electronic devices ("the Abu Ali phones"); (7) take certain measures to protect the identity of a Staff Sergeant with the United Kingdom Ministry of Defense, including allowing the witness to testify using a pseudonym and precluding certain inquiries by the defendant; (8) approve the government's production of Jencks Act material for one of its law enforcement witnesses; (9) admit certain records pursuant to business records certifications; (10) preclude any argument or evidence regarding the defendant's age or alleged susceptibility to ISIS propaganda; (11) preclude any argument

or evidence in support of a defense of duress, coercion, or "duress-lite"; and (12) preclude evidence and argument about possible punishments. Gov't's Mot. 15.[3]

A. Defendant's Statements

The government moves to admit three categories of statements made by defendant. First, the government seeks to admit statements defendant made to law enforcement agents during interviews that occurred in November 2023 and May 2024. Gov't's Mot. 35. Second, the government seeks to admit a video that allegedly depicts defendant practicing with an AK-47 rifle and addressing her husband. Gov't's Mot. 35. Finally, the government seeks to admit the information contained in defendant's 2019 and 2020 bio-enrollments, which were created during defendant's time in Syrian Democratic Forces ("SDF") internally displaced persons camps. Gov't's Mot. 35, 38.[4] The government argues that all three categories of statements, when offered by the government, are admissible as party-opponent admissions under Rule 801(d)(2)(A). Gov't's Mot. 35. At the same time, the government contends that defendant should be precluded from eliciting her own out of court statements via the testimony of other witnesses or via cross-examination because those statements constitute inadmissible hearsay. Gov't's Mot. 39.

Defendant does not object to the admission of the first category of statements, defendant's statements to law enforcement, but argues that, "if the government admits a handful of cherrypicked statements, the Court should permit [her] to admit the entirety of the interviews for non-hearsay purposes or under the rule of completeness." Def.'s Opp'n

[3] Throughout this Order, page numbers for docket filings refer to the page numbers assigned in ECF filing headers.

[4] According to the government, a bio-enrollment is "the process of . . . asking an individual for certain pedigree information, like name, date of birth, place of birth, and nationality, and registering the individual's unique biometric data, including the individual's face, iris, and fingerprints." Gov't Mot. 32 n.11.

4. As to the second category of statements, the video from one of the Abu Ali phones, defendant argues that admitting the video would violate the marital communications privilege. Def.'s Mot. 8–15; *see* Def.'s Opp'n 4 (incorporating arguments regarding the marital communications privilege by reference). And as to the third category of statements, the 2019 and 2020 bio-enrollments, defendant argues that the government cannot offer them through its listed witness and that, even if it could, any arguments based on the bio-enrollments would be speculative. Def.'s Mot 15–16; *see* Def.'s Opp'n 4 (incorporating arguments regarding the bio-enrollments by reference).

### *1. Legal Framework*

"A hearsay statement is an out-of-court statement offered to prove the truth of the matter asserted." *United States v. Blake*, 195 F. Supp. 3d 605, 609 (S.D.N.Y. 2016) (citing Fed. R. Evid. 801(c)). Hearsay statements are generally inadmissible unless they fall within an exception to, or are excluded from, the rule against hearsay. *United States v. Grecco*, 728 F. App'x 32, 35 (2d Cir. 2018) (citing Fed. R. Evid. 802).

For example, a defendant's out of court statements are excluded from the rule against hearsay when offered by the government against the defendant. *See United States v. Otufale*, 740 F. Supp. 3d 233, 242 (E.D.N.Y. 2024) ("A party's own statement . . . is not hearsay when offered by the party's opponent against the party." (citing Fed. R. Evid. 801(d)(2)(A)). Rule 801(d)(2)(A) is one of "overarching simplicity" and, accordingly, "rarely calls for significant legal analysis." 30B Wright & Miller's Federal Practice & Procedure § 6773 (2026 ed.); *see Blake*, 195 F. Supp. 3d at 609 ("[A] party's own statement, if offered against him, is not hearsay." (quoting *United States v. Marin*, 669 F.2d 73, 84 (2d Cir. 1982))).

That said, generally "[a] defendant may not introduce h[er] own prior out-of-court statements because they are hearsay, and not admissible." *United States v. Kadir*, 718 F.3d 115, 124 (2d Cir. 2013). Such statements "will be precluded unless [they] fall[] within an existing hearsay exception under FRE 802—for instance, if [they] express[] the declarant's then-existing state of mind and [are] not offered for [their] truth." *Blake*, 195 F. Supp. 3d at 610.

Alternatively, a statement that is nonetheless hearsay may be admitted under Rule 106—the "rule of completeness"—if a court concludes that the statement is "essential to explain an already admitted document, to place the admitted document in context, or to avoid misleading the trier of fact." *United States v. Gotti*, 457 F. Supp. 2d 395, 397–398 (S.D.N.Y. 2006). The purpose of the rule is to correct any "misleading impression created by taking matters out of context." *United States v. Williams*, 930 F.3d 44, 58 (2d Cir. 2019) (quoting Fed. R. Evid. 106 advisory committee note to 1972 proposed rules). But Rule 106 does "not . . . require the admission of portions of a statement that are neither explanatory of nor relevant to the admitted passages." *United States v. Johnson*, 507 F.3d 793, 796 (2d Cir. 2007). And the "mere fact that a statement is probative and contradicts a statement offered by the opponent is not enough to justify completion under Rule 106." Fed. R. Evid. 106 advisory committee note to 2023 amendment.

*2. Defendant's November 2023 and May 2024 Interviews*

The government seeks to admit certain statements that defendant made to FBI agents in interviews conducted on November 11, 2023, and May 6, 2024. Gov't's Mot. 33–34, 38. These statements include her "acknowledge[ment] of her love for [Abu Ali]," her admission that "she lived away from her own family," her identification of herself in

pictures on one of the Abu Ali phones, and her identification of her kunya on the Military Training Document. Gov't's Mot. 38.

Defendant does not object to the admission of these statements, and says that she "does not intend to admit any of her 2023 or 2024 interview statements as direct evidence in her case-in-chief." Def.'s Opp'n 4. Defendant maintains, however, that the Court should permit her to admit the entirety of the interviews for non-hearsay purposes under the rule of completeness "if the government admits a handful of cherrypicked statements[.]" Def.'s Opp'n 4. In the alternative, defendant argues that the Court should admit direct context for each statement that the government admits in its case-in-chief. Def.'s Opp'n 8.

Given that these statements undisputedly fall within the scope of Rule 801(d)(2)(A), they are not hearsay if offered by the government. *See Blake*, 195 F. Supp. 3d at 609 ("[A] party's own statement, if offered against him, is not hearsay." (quoting *United States v. Marin*, 669 F.2d 73, 84 (2d Cir. 1982))). Accordingly, the government's motion to admit these statements is GRANTED.

Because the Court has no way of knowing how the government will present these statements at trial, it declines to categorically preclude defendant from offering other portions of the FBI interviews for completeness at this time. Indeed, the Court can imagine a scenario in which defendant's statements would be presented in a way that might create a misimpression sufficient to warrant the admission of additional portions of the interviews. *See* Fed. R. Evid. 106 advisory committee note to 2023 amendment ("[T]he rule of completeness[ is] grounded in fairness[.]"); *see United States v. Cooper*, No. 19-cr-00159, 2019 WL 5394622, at *8 (E.D.N.Y. Oct. 22, 2019) ("To allow the government to introduce [the defendant]'s statements to the effect that he was driving his car and fled the scene, while omitting [his] only statements regarding what did or did not

happen in between, would be to skew the overall tenor of [the defendant]'s comments toward the more inculpatory, depriving the jury of a fair and impartial view of [his] words.").[5] Accordingly, the government's motion to preclude defendant from offering her own statements is DENIED. The government is directed to provide defendant's full statements from the November 11, 2023, and May 6, 2025 interviews to the Court by September 15, 2026, so that the Court may review the statements in context prior to trial.

*3. Video from the Abu Ali Phone*

In light of the Court's ruling, *infra* § II.C, regarding the applicability of the marital communications privilege, the Court RESERVES DECISION on this motion.

*4. 2019 and 2020 Bio-Enrollments*

The government argues that the 2019 and 2020 bio-enrollments, which contain defendant's allegedly false representations regarding her name and place of birth, fall similarly within the scope of Rule 801(d)(2)(A). Gov't's Mot. 32–33, 38–39. Defendant counters that these documents constitute nested hearsay and violate the Confrontation Clause of the Sixth Amendment. Def.'s Mot. 16–17.

Regarding hearsay, defendant observes that the government has listed "Bio-enrollments witness, U.S. Department of Defense" on its witness list and asserts that "[t]he United States Department of Defense did not conduct bio-enrollments at Al Hawl and Al Roj; the [SDF] did." Def.'s Mot. 15–16. Therefore, defendant concludes that any U.S. bio-

---

5 By way of example, if the government were to introduce—in isolation—defendant's statement confirming that she was the individual depicted in the photograph with the ISIS flag, defendant could make an argument for examination on the other statements she made to FBI officers, specifically that the flags "were not hers and she did not hang them" and that "she had been brought there and had to live within the culture," Def.'s Opp'n 8, because those statements tend to explain defendant's version of events as to why the ISIS flags were there and are therefore relevant context for the photograph.

enrollment witness "testifying that based on these records, a member of SDF accurately recorded statements of [defendant]" would present hearsay within hearsay. Def.'s Mot. 16. Defendant concedes that her own statements are admissible under 801(d)(2)(A) but argues that the SDF officer's statements in the report—if offered through a U.S. bio-enrollment witness—"meets no [hearsay] exception or exclusion." Def.'s Mot. 16.

The government responds that, as transcript-style statements of a party opponent, defendant's words are not hearsay just because someone else wrote them down. Gov't's Opp'n 18. Moreover, the government asserts the statements—all of which it alleges are false—cannot be hearsay because they "are not being offered for their truth." Gov't's Opp'n 21. Finally, the government says that since it "has confirmed that the U.S. Department of Defense conducted the 2019 bio-enrollment" that bio-enrollment is admissible pursuant to the hearsay exception for records of regularly conducted activity under Rule 803(6). Gov't's Opp'n 20.

Rule 803(6) provides that a record of an act or event is excepted from the hearsay rule if: "(A) the record was made at or near the time by—or from information transmitted by—someone with knowledge; (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit; (C) making the record was a regular practice of that activity; (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and (E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness." Fed. R. Evid. 803(6).

Defendant argues that the second layer of hearsay—"the [] officer's statement in the [bio-enrollment]" is inadmissible hearsay because an "American witness's testimony recounting [an] SDF officer's statement" constitutes hearsay within no exception. Def's Mot. 16. But contrary to defendant's assertion, the government has "confirmed that the U.S. Department of Defense conducted the 2019 bio-enrollment" and that "the proposed U.S. Department of Defense witness on bio-enrollments will be able to testify live to that fact." Gov't's Opp'n 20. Accordingly, the 2019 bio-enrollment appears to fall within the business records exception provided that the government does in fact produce a witness that can establish the requirements of Rule 803(6).[6]

The Court construes the government's representation to be that it will produce a witness that can attest that the 2019 bio-enrollment was "created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial," *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 324 (2009), and that it was in fact "kept in the course of a regularly conducted activity of a business," Fed. R. Evid. 803(6)(B). Assuming the government does produce such a witness, defendant's Confrontation Clause argument, Def's Mot. 16–17, is unavailing because "to implicate the Confrontation Clause, a statement must be hearsay . . . and it must be testimonial." *Smith v. Arizona*, 602 U.S. 779, 800 (2024).

---

6 Defendant disputes that the bio-enrollments are records of regularly conducted activity at all, arguing that they "appear to be foreign intelligence reports." Def.'s Opp'n 40. Defendant offers no support for this argument but rather directs the Court to one of the bio-enrollments. *See* Def.'s Opp'n 40 (citing Def.'s Mot. Ex. C, ECF No. 186-2). Absent some affirmative evidence or argument that the records are in fact foreign intelligence reports, the Court declines to deny the government's motion on this basis.

Accordingly, the government's motion is GRANTED as to the statements contained in the 2019 bio-enrollment provided the government produces an appropriate witness at trial. The court RESERVES DECISION on the admissibility of the statements contained in the 2020 bio-enrollment.[7]

Finally, defendant argues that the government should be "precluded from arguing or eliciting testimony that [she] refused to surrender until ISIS's last stand in Baghouz" because such an argument is "wildly speculative." Def's Mot. 18–19. On this point, the government says that it "does not intend to have any witness provide speculative testimony" but rather plans to "offer witness testimony regarding factual information about the defendant's arrest date, ceasefires, and the date ISIS fell to Coalition Forces," and "argue the meaning of the evidence in summation." Gov't's Opp'n 22–23. Given the government's framing of how it will present its case, the Court cannot conclude that the probative value of the circumstances surrounding defendant's arrest are "substantially outweighed by the risk of misleading the jury and confusing the actual issues in the case." Def's Mot. 18.[8]

---

7 The government says it "is still investigating the circumstances, but understands that the SDF was involved, possibly alongside the Department of Defense," in conducting the 2020 bio-enrollment. Gov't's Opp'n 20. Accordingly, the Court does not have enough information to rule on the admissibility of the 2020 bio-enrollment at this time.

8 The cases defendant cites on this point are distinguishable. *United States v. Rossy* dealt with the admission of a victim's criminal and disciplinary history. No. 22-cr-550-02, 2023 WL 8039500, at *3 (S.D.N.Y. Nov. 20, 2023). There, *after* finding the prior bad acts in question irrelevant under Rules 401 and 402, the court additionally noted that "the [v]ictim's criminal and disciplinary history was quite lengthy" and thus questioning on that history was likely to be a waste of time and "stood a good chance of confusing the jury as to the actual crimes charged." *Id.* at *3. And in *United States v. Stewart*, the trial court precluded cross-examination of a government witness that it found unnecessary given the "plethora of impeachment material" that was presented at other points in the trial. 433 F.3d 273, 313 (2d Cir. 2006). Here, by contrast, the circumstances of defendant's arrest

* * *

Accordingly, the government's motion to admit defendant's statements is GRANTED in part as described above, the Court RESERVES DECISION as to the 2020 bio-enrollments, and the government's motion to preclude defendant from admitting her own statements as context is DENIED.

B. Coconspirator Statements

The government seeks to admit three categories of statements, each of which it claims fall within the hearsay exception for coconspirator statements. Gov't's Mot. 40–55. First, the government seeks to introduce statements contained in the Inkpad Notepad (Workpail) account of defendant's mother that it alleges to contain "a legal discussion of the elements of material support for terrorism" as well as "coaching" defendant and her sister "regarding the personal narrative they should advance in interviews with the government." Gov't's Mot. 40. [9] The government says these statements were made as a part of a conspiracy to obstruct justice. Gov't's Mot. 40.

Second, it seeks to admit "[seven] Additional Military Training Documents and . . . [ten] Nusaybah Katiba Documents as co-conspirator statements by ISIS members in connection with the provision of personnel support through the women being trained by the Nusaybah Katiba and receiving weapons." Gov't's Mot. 29–30, 46–50. The

are more probative of her support for ISIS given that part of her theory of the case is that she was drawn into the culture against her will. If defendant was given the opportunity to surrender and did not, that could make her theory less plausible. On the contrary, if defendant was not given the opportunity to surrender, that could make her theory more plausible.

9 Inkpad Notepad (Workpail) is a note-taking and to-do list application. Gov't Mot. 40.

government says these statements were made as a part of a conspiracy to provide material support to ISIS. Gov't's Mot. 46.

Third, the government seeks to introduce a note found on one of the Abu Ali Phones, which the government alleges Abu Ali wrote to defendant, in which he (1) professes his love for defendant; (2) asks Allah that the defendant be his wife in "Jannah," the Arabic word for heaven, and (3) directs the defendant to "make duaa," or make a prayer, that Allah "is accepting our hijra and jihad and my Shahadah." Gov't's Mot. 50–51, see Gov't's Mot. 29.[10] The government says these statements were made as a part of a conspiracy between defendant and her husband "to materially support ISIS by waging jihad for ISIS." Gov't's Mot. 50.

*1. Legal Framework*

Under Rule 801(d)(2)(E), a statement is not hearsay if it is offered against an opposing party and "was made by the party's coconspirator during and in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2)(E). To admit statements under this rule, the Court must find by a preponderance of the evidence that (1) there was a conspiracy, (2) that its members included the declarant and the party against whom the statement is offered, and (3) that the statement was made during the course of and in furtherance of the conspiracy. *United States v. Adelekan*, 567 F. Supp. 3d 459, 466 (S.D.N.Y. 2021). "In determining the existence and membership of the alleged conspiracy, the court must consider the circumstances surrounding the statement, as well as the contents of the alleged

---

10 While the government claims that "Hijra means migration," "Jihad refers to the fight against the enemies of Islam," and "Shahadah means martyrdom," and concludes that "[t]he note thus refers to the defendant and her husband's migration to ISIS territory and their jihad against the enemies of Islam, as well as her husband's martyrdom" it makes those assertions without citation to authority.

coconspirator's statement itself." *United States v. Gupta*, 747 F.3d 111, 123 (2d Cir. 2014). "[S]tatements proffered as coconspirator statements may be admitted in evidence on a conditional basis, subject to the later submission of the necessary evidence" of each element. *United States v. Tracy*, 12 F.3d 1186, 1199 (2d Cir. 1993) (citing *United States v. Geaney,* 417 F.2d 1116, 1120 (2d Cir. 1969)).

The government must first demonstrate the existence of a conspiracy. To determine "whether a conspiracy exist[s] under Rule 801(d)(2)(E), the key is coordinated action." *United States v. Musaibli*, 42 F.4th 603, 615 (6th Cir. 2022); *see* 30B Wright & Miller's Federal Practice & Procedure § 6778 (2026 ed.) ("For purposes of Rule 801(d)(2)(E), the goal of the identified conspiracy need not be criminal or even illicit . . . . The key is coordinated action."). That said, the government must do more than describe the conspiracy in broad or general terms; the alleged conspiracy must have a specific goal. *United States v. Gigante*, 166 F.3d 75, 83 (2d Cir. 1999) ("[The district court found] that there [wa]s a general overriding conspiracy among . . . these alleged Mafia groups . . . [and] then admitted some evidence under Rule 801(d)(2)(E) based solely on this finding of a general conspiracy. This was error."). While the hearsay statement itself "may be considered in establishing the existence of the conspiracy," *United States v. Al-Moayad*, 545 F.3d 139, 173 (2d Cir. 2008), "there must [also] be some independent corroborating evidence of the defendant's participation in the conspiracy." *Gigante,* 166 F.3d at 82. Finally, "the alleged conspiracy" for purposes of Rule 801(d)(2)(E) "need not be the same as the one charged." *Musaibli*, 42 F.4th at 615. "In fact[,] there need not even be a conspiracy charge" for a party to invoke the Rule. *Id.*

Next, the government must establish "the existence of a conspiracy between the declarant and the party" against whom the statement is offered. *United States v.*

*Gasperini*, No. 16-cr-00441, 2017 WL 3140366, at *5 (E.D.N.Y. July 21, 2017), *aff'd*, 729 F. App'x 112 (2d Cir. 2018). As with the first element, the proponent "may rely on the contents of the coconspirator statements" to show that the declarant was a coconspirator of the defendant. *Musaibli*, 42 F.4th at 615. However, the government must also offer "some independent corroborating evidence of the defendant's participation in the conspiracy." *United States v. Tellier,* 83 F.3d 578, 580 (2d Cir. 1996).

Finally, the government must show that the statements were made during the course of and in furtherance of the alleged conspiracy. The "during the course of" prong requires the declarant's statement to be "made while the conspiracy is active: after its formation and before its cessation." *United States v. Saneaux*, 392 F. Supp. 2d 506, 515 (S.D.N.Y. 2005) (citing *United States v. Grossman,* 843 F.2d 78, 83 (2d Cir. 1988)). The "in furtherance" prong requires the statements to be "designed to promote or facilitate achievement of the goals of th[e] conspiracy," *United States v. Rivera*, 22 F.3d 430, 436 (2d Cir. 1994), by, for instance, "provid[ing] reassurance, or seek[ing] to induce a coconspirator's assistance, or serv[ing] to foster trust and cohesiveness[.]" *United States v. Maldonado-Rivera*, 922 F.2d 934, 959 (2d Cir. 1990).

### *2. Statements Made in Furtherance of a Conspiracy to Obstruct Justice*

The government seeks to introduce an Inkpad Notepad (Workpail) note from an account belonging to the defendant's mother. Gov't's Mot. 44. In the government's view, this note was written as a part of a conspiracy to obstruct justice because "[t]he[] instructions to the defendant and her sister mirror the narrative that the defendant has continually sought to present in this proceeding—that her father is to blame for everything that she is charged with," and because "the note makes clear that this defense is 'for the

record.'" Gov't's Mot. 41. Therefore, the government concludes the note qualifies as a "quintessential coconspirator statement that is admissible at trial in support of an uncharged conspiracy to obstruct justice by lying to law enforcement and hamperng [sic] the government's investigation." Gov't's Mot. 44–45.

Defendant objects on multiple grounds, primarily noting that there is no indication as to who authored the note nor of who—if anyone—received it. Def's Opp'n 16. Defendant also argues that there are numerous other Inkpad notes in the same application—conspicuously omitted by the government—that are "clearly not [defendant's mother's] first-person statements." Def's Opp'n 16 (citing Def's Opp'n 50–51 ("Ex. B")), *see id.* 16–17 (describing other notes). And even assuming the note was written by defendant's mother, defendant argues the government has put forth no evidence that she "knowingly agreed to any unlawful specific shared criminal task to obstruct justice." Def's Opp'n 18. Because a "statement in furtherance of a conspiracy of one . . . is no conspiracy at all," Def's Opp'n 17, defendant concludes the note is inadmissible hearsay. Def's Opp'n 17–18.

The government's argument fails because it has not established by a preponderance of the evidence that defendant was a member of the alleged conspiracy. To admit a statement as non-hearsay under Rule 801(d)(2)(E), the proponent must put forward evidence, independent of the proffered hearsay statements, demonstrating that, *inter alia*, "the declarant and the person against whom the statement is offered belonged to the conspiracy." *Stewart*, 433 F.3d at 291. For example, in *Stewart*, the record contained "ample evidence of a conspiracy among [the defendants] to cover up what they said and did . . . by responding to [investigator] inquiries instead of asserting their Fifth Amendment rights . . . and by giving false and misleading responses to certain of the investigators' questions." 433 F.3d at 291. Part of that "ample evidence" was that one of

the defendants contacted the government and admitted he had "lied twice to [investigators] about the content of his . . . conversation with [his co-defendant]." *Id.* at 287. Put differently, there was independent proof—over and above the statements made to investigators—that the defendants were jointly engaged in "lies and [a] subsequent cover-up." *Id.* at 287; *see also United States v. Amri*, No. 17-cr-00050, 2017 WL 3262254, at *9 (E.D. Va. July 31, 2017), *aff'd sub nom. United States v. Queen*, 738 F. App'x 794 (4th Cir. 2018) ("The similarity of the[] statements, in conjunction with their proximity to the conversation that [one defendant] had with [his codefendant] just after his . . . interview [with the FBI], reveals that the two were not just sharing information but in fact formed an agreement to protect their friend . . . by providing false and misleading information to the FBI.").

Here, by contrast, the government's proof that defendant was a member of the alleged conspiracy is the bald assertion that defendant and her sister were "recipients of the note." Gov't's Mot. 45. Defendant's name appears nowhere in the note, the note is not alleged to have been transmitted to defendant, and the note is not alleged to have been recovered from a device to which defendant even had access. Indeed, the note is addressed to "Elvis." Def's Opp'n 48 ("Ex. A"). Far from "convincingly implicat[ing]" defendant, it is unclear to whom the note is directed or who it was shared with. *United States v. Padilla*, 203 F.3d 156, 162 (2d Cir. 2000) ("The [note's] reference to [the defendant], within the broader context of the [codefendants'] criminal relationship, was independent evidence sufficient to corroborate the substantial hearsay evidence that [defendant] was a member of the conspiracy to obstruct justice.").

Moreover, the government has not offered sufficient "independent corroborating evidence of the defendant's participation in the conspiracy" other than the hearsay

statements themselves. *Tellier,* 83 F.3d at 580. To the extent the government contends that defendant's defense strategy is somewhat aligned with the content of the note, Gov't's Mot. 44–45, the Court declines to conclude that a defendant's assertion of her innocence, absent more persuasive evidence of that assertion's falsity, *see Stewart*, 433 F.3d at 287, 291, is sufficient to establish her membership in the alleged conspiracy. *Cf. Amri*, 2017 WL 3262254, at *9 (concluding that "the circumstantial evidence is more than enough to demonstrate that . . . an agreement [to mislead investigators] was reached" because the defendant "admit[ted] to speaking to [his codefendant] immediately after [the] . . . interview" in which he lied to the FBI and telling that codefendant "not to mention" the information about which he lied to the FBI, and where the codefendant relayed that "identical" lie to the government's confidential informant).[11]

Accordingly, the government's motion to admit the statements in the Inkpad Notepad note is DENIED.

#### *3. Statements Made in Furtherance of a Conspiracy to Provide Material Support for ISIS Through the Provision of Personnel*

The government moves to admit seven Additional Military Training Documents and ten Nusaybah Katiba Documents as co-conspirator statements by ISIS members in connection with an alleged "conspiracy to provide material support to ISIS through the provision of personnel by women seeking training, affiliation, and/or membership with the Nusaybah Katiba." Gov't's Mot. 47. Defendant counters that an alleged conspiracy

---

[11] Because the government offers no evidence of defendant's membership in a conspiracy to obstruct justice, this analysis would be the same even assuming the note was written by defendant's mother. *See United States v. Abu-Jihaad*, 531 F. Supp. 2d 289, 295 (D. Conn. 2008) ("Because [the government] has alleged that there were only two conspirators . . . the conspiracy did not exist until the defendant joined it.").

including "all women ever to access Nusaybah Katiba" is impermissibly broad and insufficiently specific. Def.'s Opp'n. 19.

As a threshold matter, the Court must determine whether the government's proffered conspiracy is sufficiently specific. *See United States v. Bellomo*, 176 F.3d 580, 586 (2d Cir. 1999) ("[I]n order to comply with [Rule] 801(d)(2)(E) and admit the testimony of a coconspirator, the district court in each instance must find the existence of a specific criminal conspiracy beyond the general existence of the Mafia."). Both parties contend that the Sixth Circuit's decision in *United States v. Musaibli*, 42 F.4th 603 (6th Cir. 2022) is instructive on this point. Gov't's Mot. 47; Def.'s Opp'n 19. In *Musaibli*, the defendant was charged with, among other things, conspiracy to provide material support to a foreign terrorist organization and receipt of military-type training from the same. 42 F.4th at 609. Prior to trial the government identified eight exhibits that had been recovered from ISIS facilities, many of which referenced the defendant, and all of which could be directly linked to him. *See id*. The government moved to admit these documents pursuant to Rule 801(d)(2)(E), arguing that "the United States had designated ISIS as a terrorist organization in May 2014, and that fighters like [the defendant] who pledged allegiance to the group and fought for it had entered a conspiracy to provide material support to it." *Id*. at 610.

After a four day evidentiary hearing, the district court concluded that "the government had laid a sufficient foundation at least to suggest that [the defendant] had enlisted[ed] as a foot soldier with an ISIS military branch[,]" that "the government had provided evidence indicating that [the defendant] had received some military training after recruitment from ISIS[,]" and that "the government provided sufficient evidence to suggest that [the defendant] had provided support to ISIS by participating in some fighting

and other routine tasks like guard duty." *Id.* at 611. Still, the district court concluded that "the record d[id] not . . . establish the scope of the conspiracy that the defendant allegedly joined with sufficient precision to permit the statements in the exhibits to be considered his vicarious admissions." *Id.*

The Sixth Circuit disagreed with the district court's conclusion. Focusing "particularly [on] whether the government adequately defined the scope of the conspiracy that it claimed existed," the court reasoned that "[the defendant]'s indictment provide[d] an intuitive set of boundaries defining the conspiracy's scope." *Id.* at 615. Moreover, the court pointed to witness testimony that established that certain exhibits "identif[ied] [the defendant] and others as providing services to ISIS, specifically as members of the Tariq Bin Ziyad battalion." *Id.* at 616. For the documents that did not directly identify the defendant, the court observed that they "d[id] identify others with whom he served in the Tariq Bin Ziyad battalion, the roles that they played in the unit, and how the organization operated." *Id.* The court noted that the defendant's "own words supported the existence of a conspiracy to provide ISIS with personnel and services" given his admission that "he and others went through training and swore allegiance to ISIS as part of their enrollment in the unit." *Id.* Taken together, this evidence led the court to believe that the defendant's conduct "was clearly undertaken with compatriots to provide ISIS with personnel and services." *Id.* at 616–17. The court also recognized that "[a]ny lingering doubts about whether the district court erred" were dispelled by the testimony of the government's witness, who had "personal knowledge of the battalion's operations and its members." *Id.* That witness testified to "recognizing [the defendant]'s database entries and having seen him around while both were members of ISIS" and affirmed that the defendant

"approached him at one point about correcting information in [the defendant's] record so that [the defendant] could receive additional benefits." *Id.*

While acknowledging its initial intuitive appeal, the court rejected the defendant's argument that "allowing the coconspirator-statement exemption to include the conspiracy at issue would allow the government to enter any statement made by any participant in ISIS's sizeable membership, regardless both of how tangentially connected this was to his conduct." *Id*. The court drew a distinction between a conspiracy defined "at such a general level" that it "could include statements that share no other purpose than the one superimposed on them after the fact by prosecutors" and one that "was large" but not "boundless." *Id*. at 618. The court held that "providing ISIS with material support and resources in the form of personnel and services" was the latter because "those goals set a clear boundary to the plot." *Id*. (observing that "statements made by those offering services and personnel to *other* terrorist groups [would be] outside the limits of this conspiracy" as would be "a statement that a member of ISIS made after withdrawing from the conspiracy or after the conspiracy had terminated"). In conclusion, the court held that "statements generated by ISIS's bureaucratic apparatus to support the mission of providing the terrorist group with personnel and services . . . fit comfortably within the alleged conspiracy's scope." *Id.*

As the foregoing discussion should illustrate, government's proffered conspiracy—one to provide material support to ISIS through the provision of personnel by women seeking training, affiliation, and/or membership with the Nusaybah Katiba—is not "impermissibly expan[sive] [in] scope," Def.'s Opp'n 19, under *Musaibli*. Indeed, the conspiracy that the *Musaibli* court found to have a sufficiently "clear boundary" was larger than the one alleged by the government here, as it encompassed *anyone* in ISIS who

provided material support in the form of personnel and services. 42 F.4th at 618. Because the conspiracy at issue here only involves those who seek to provide material support to ISIS through the provision of personnel by women seeking, among other things, training from the Nusaybah Katiba battalion, it is arguably more specific that the conspiracy analyzed in *Musaibli*.[12]

i. The Additional Military Training Documents

For the reasons stated in the Court's Memorandum and Order on defendant's motion to exclude, ECF No. 189, the government's motion to admit the Additional Military Training Documents—which appear to differ only from the initial Military Training Document in the signatures they bear and their other handwritten portions—is conditionally GRANTED subject to the government properly authenticating the documents and providing the evidence purportedly linking defendant to the conspiracy to provide material support to ISIS.[13]

---

[12] The documents at issue here are different than the ones at issue in *Musaibli*. As defendant notes "none of the seventeen documents the government seeks to admit names [defendant]," "relate[s] to a woman with whom she ever had any contact," or "will be introduced by a witness with personal knowledge of her." Def's Opp'n 20. Those facts may bear on other aspects of the 801(d)(2)(E) analysis, but they are not dispositive on the question of whether the government's alleged conspiracy is sufficiently specific to pass legal muster.

[13] Defendant's arguments regarding the absence of her name on the Additional Military Training Documents, Def.'s Opp'n 24, do not move the needle in her favor because coconspirator statements can be offered against a defendant even if the defendant was unaware of the particular statement, and indeed even if the statement does not implicate the defendant in the conspiracy at all. *See United States v. Napout*, No. 15-cr-00252, 2017 WL 6375729, at *2 (E.D.N.Y. Dec. 12, 2017) ("So long as the government establishes that a statement was made by a coconspirator of a defendant during and in furtherance of a conspiracy in which both the defendant and the coconspirator were involved, the statement is admissible under FRE 801(d)(2)(E), even if the statement does not relate specifically to the defendant."). And defendant's arguments regarding a lack of independent corroborating evidence, Def.'s Opp'n 24–26, are unavailing because the

ii. The Nusaybah Katiba Documents

The government seeks to admit ten Nusaybah Katiba Documents falling into four categories: (i) requests for training; (ii) the requirements and rules for women to join the Katiba; (iii) letters from women writing about issues they encountered in seeking to join the Katiba; and (iv) a letter from a woman seeking to resign from the Nusaybah Katiba. Gov't's Mot. 30–31. The Court RESERVES DECISION on the government's motion to admit the Nusaybah Katiba Documents at this time.[14]

*4. Statements Made in Furtherance of A Conspiracy to Provide Material Support for ISIS by Waging Jihad for ISIS*

The government seeks to introduce a note found on one of the Abu Ali phones, which the government alleges Abu Ali wrote to defendant, in which he (1) professes his love for defendant; (2) asks Allah that the defendant be his wife in "Jannah," the Arabic

Court has reserved decision on whether the marital communications privilege is applicable to the Abu Ali phones, which, if admitted, contain independent corroborating evidence of defendant's involvement in a conspiracy to provide material support to ISIS. *See* Mem. & Order Mot. to Exclude 17 ("To show defendant is a member of the conspiracy, the government submits it will offer the Military Training Document itself, along with photos of defendant in front of an ISIS flag[ and] a video of defendant carrying an AK-47 the government purports was in her possession[.]").

[14] The Court notes that these documents, which the government purports to "demonstrate that *women in Raqqa* voluntarily sought membership and training with the Katiba," Gov't Mot. 30–31, appear to be of minimal relevance given that the government (1) has not alleged that defendant ever received training in Raqqa, Gov't's Nov. 26, 2025 Ltr. 2 n.1, ECF No. 130; (2) has not alleged that defendant was a member of the Nusaybah Katiba, Motion to Dismiss Supplemental Response 4, ECF No. 176; and (3) dates the Military Training document—its only arguably direct proof of defendant's receipt of military training—as being created in March 2018, well after any of the Nusaybah Katiba documents were in circulation and well after ISIS was defeated in Raqqa. *See* Gov't Mot. 22, 31 ("The documents from this drive . . . are dated between approximately October 2026 [sic] and May 2017[.]"); *see also* Laris Karklis & Tim Meko, *The rise and fall of the Islamic State in Iraq and Syria,* WASH. POST (Oct. 17, 2017), https://www.washingtonpost.com/graphics/2017/world/rise-and-fall-of-isis/.

word for heaven, and (3) directs the defendant to "make duaa," or make a prayer, that Allah "is accepting our hijra and jihad and my Shahadah." Gov't's Mot. 29, 50. This note, the government claims, contains "statements made by Abu Ali during and in furtherance of an uncharged conspiracy between [] defendant and her husband to materially support ISIS by waging jihad for ISIS." Gov't's Mot. 50. Defendant argues that a conspiracy to "wage jihad for ISIS" is insufficiently specific and, in any case, this note is protected by the marital communications privilege. Def.'s Opp'n 26–29.

The Abu Ali note is inadmissible hearsay that does not fall within the coconspirator exception. A conspiracy to provide material support for ISIS by waging jihad for ISIS is insufficiently specific. Indeed, it is not far afield from the broadly defined conspiratorial arrangements the *Musaibli* court unequivocally rejected, such as conspiracies to participate in "'organized crime' or 'terrorism' or just 'breaking the law.'" 42 F.4th at 618. That is because the government identifies no specific goal of this purported conspiracy as is required under Rule 801(d)(2)(E). While "the goal of the identified conspiracy need not be criminal or even illicit," there must be some "specific goal." Mem. & Order Mot. to Exclude 15 (first quoting 30B Wright & Miller's Federal Practice & Procedure § 6778 (2026 ed.); then citing *Gigante*, 166 F.3d at 82–83).

Here, the government barely defines what an agreement to wage jihad for ISIS entails and does not attempt to articulate what the goal of waging jihad might be. *See* Gov't's Opp'n 54 ("Abu Ali's note thus refers directly to his and the defendant's collective conduct in moving to ISIS-controlled Syria and waging jihad. The conspiracy is thus the continued jihad by the defendant and her husband, *i.e.*, the continued provision of material support to ISIS through their fighting for ISIS."). It appears the government is describing a conspiracy by defendant and Abu Ali to generally participate in terrorism for

ISIS, a theory the *Musaibli* court suggested it would reject. Thus, to the extent the government argues that the goal of waging jihad for ISIS is to "support ISIS by fighting for ISIS," the Court concludes that "end" is insufficiently specific to provide the "important limiting principle" that Rule 802(d)(2)(E) requires. *Musaibli*, 42 F.4th at 618; *see also Gigante*, 166 F.3d at 82 ("The district court in each instance must find the existence of a *specific* criminal conspiracy[.]"); Mem. & Order Mot. to Exclude 23 (observing that the "objective of the alleged conspiracy is to provide material support for ISIS via military means," that is, "the organization and coordination of ISIS's military operations").[15]

Accordingly, the government's motion to admit the note is DENIED.

C. Preclusion of Evidence or Argument Regarding Classified Information

The government moves to preclude "any inquiry or argument about classified information during trial outside the scope of CIPA," as well as "general questions or arguments about the existence or non-existence of intelligence information about the defendant." Gov't's Mot. 55, 57. Given defendant's assertion that she will not elicit any classified information from any witness at trial, Def.'s Opp'n 30, and the fact that parties are generally permitted to make arguments about the presence or absence of relevant evidence in a case, the government's motion is DENIED as moot without prejudice to renewal at trial.

---

[15] Nor has the government established that defendant was a member of the alleged conspiracy. Indeed, nothing in the note suggests that defendant ever agreed to anything. As the government concedes, "[t]he note at issue is not self-evidently a communication—it is only a note on a phone and not, for example an email or text message to the defendant." Gov't Mot. 53. And to the extent that the photos and videos contained on the Abu Ali phones might provide some independent corroborating evidence, as discussed above, the alleged conspiracy is simply too overbroad and lacking in any specific goal to meet the requirements of Rule 802(d)(2)(E).

D. Admission of Evidence from Defendant's Husband's Electronic Devices

The government moves to admit "materials related to [Abu Ali's] ISIS membership" including "ISIS documents addressed to or regarding Abu Ali's ISIS membership and service, ISIS propaganda, images of the ISIS flag, photographs of weapons, and photographs of ISIS soldiers with their weapons," collectively the "Abu Ali ISIS Evidence". Gov't's Mot. 57. The government claims that this evidence is probative of the authenticity of the Military Training Document because "some of the materials comprising the Abu Ali ISIS Evidence were filed in the same folder" on Abu Ali's phone, because it "establishes that Abu Ali's engagement with ISIS was significant enough that [] defendant must have been aware of it," and because it contains "selfie-style photographs" that were allegedly taken by defendant. Gov't's Mot. 58.

Defendant states that she has "no objection to the admission of stamped or signed ISIS documents relating specifically to Abu Ali's ISIS service, such as his absentee notifications, his military court records, his deployment orders, his human resources records, his medical/disability records, and his own proofs of weapon ownership." Def.'s Opp'n 31. Outside of those documents, defendant contends that the Abu Ali ISIS Evidence is irrelevant to the charged crime—defendant's receipt of military-type training. Def.'s Opp'n 31.

Given defendant's lack of objection to the admission of "stamped or signed ISIS documents relating specifically to Abu Ali's ISIS service, such as his absentee notifications, his military court records, his deployment orders, his human resources records, his medical/disability records, and his own proofs of weapon ownership," the government's motion is GRANTED as to those documents from the Abu Ali phones. The Court

RESERVES DECISION on the government's motion to admit other Abu Ali ISIS Evidence at this time.

E. Measures to Protect the Identity of One of the Government's Witnesses

The government moves to take certain measures to protect the identity of a witness who is an active servicemember in the U.K. Ministry of Defense (the "Military Witness"). Gov't's Mot. 60. The government requests that the Court (i) permit the Military Witness to testify under a pseudonym rather than disclose his true identity; (ii) prohibit members of the public from possessing electronic devices in the courtroom; and (iii) preclude the defendant from inquiring into the Military Witness's true identity, place of residence, location of family, military service, and other matters unrelated to the particular work that he performed at the Regional Exploitation Center ("REC") that processed the Abu Ali Phones and the devices containing the Additional Military Training Documents and the Nusaybah Katiba Documents. Gov't's Mot. 60.

1. *Use of a Pseudonym*

Given that defendant has no objection to this request so long as the government does not use an "obvious pseudonym," Def.'s Opp'n 35, the government's motion is GRANTED on the condition that it uses a nonobvious pseudonym for its witness.

2. *Electronic Devices*

Local Civil Rule 1.8 prohibits members of the general public from bringing electronic devices into the courtroom absent express permission of the Court. *See* Local Civil Rule 1.8.; *see also* Local Criminal Rule 1.1(b). However, Administrative Order 2025-02 specifically allows "attorneys presenting appropriate verification of bar membership"

to bring electronic devices into the courthouse.[16] The government provides no specific reason to depart from this standard practice. Accordingly, the Court declines to exercise its authority to prevent defense counsel from possessing electronic devices, especially given counsel's assurance that it will not take photographs of the witness. Def.'s Opp'n 36.

Accordingly, the government's motion is DENIED without prejudice to renewal if necessary for a specific reason during trial.

*3. Questioning Regarding Military Witness's True Identity, Place of Residence, Location of Family, Military Service, and Other Matters*

Given that defendant "does not intend to ask the Military Witness about his true identity, place of residence, or the location of his family," the government's motion is DENIED as moot as to those lines of questioning. As to questioning regarding the witness's military service and other matters, the Court notes the Confrontation Clause concerns raised by defendant, *see* Def.'s Opp'n 35, and the fact that the government apparently has yet to provide the "necessary disclosures" as to this witness, Gov't's Mot. 50. Accordingly, the government's motion to preclude questioning on the Military Witness's military service and other matters is DENIED.[17]

F. <u>Government's Production of Jencks Act Material for One of Its Witnesses</u>

The government moves the Court to approve its production of Jencks Act material for FBI Special Agent Maurer. "[T]he government expects to call Special Agent Maurer to testify regarding the circumstances and substance of the defendant's statements during a

---

16 Although the government cites Administrative Order 2007-10 for this proposition, that Order has been withdrawn and is no longer operative. *See* E.D.N.Y. Administrative Order No. 2007-10; Gov't Mot. 65.

17 As should go without saying, any lines of questioning that are irrelevant to the scope of the witness's testimony or involvement in this case may be objected to.

May 2024 Mirandized interview," including "statements regarding [defendant's] time in ISIS-controlled territory, her relationship with her husband and his family, her use of a kunya, and her positive identifications of certain photographs[,]" (the "Expected Testimony"). Gov't's Mot. 66. The government argues that even though "Special Agent Maurer is the primary case agent and thus was involved in all aspects of the government's investigation of the defendant," the government must only produce Jencks Act material related to the subject matter of the 2024 interview because that is the only aspect of his investigation about which Special Agent Maurer will testify. Gov't's Mot. 66–67.

Defendant contends that the government's view of its Jencks Act obligation is impermissibly narrow. She argues that "all prior statements made by Special Agent Maurer regarding his investigation of [defendant] are relevant to his testimony" and therefore the Court should order them disclosed. Def.'s Opp'n 37.

The Jencks Act requires that, following a government witness's direct testimony, the government produce to defendants "any statement of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified." *United States v. Bin Laden*, 397 F. Supp. 2d 465, 490 (S.D.N.Y. 2005), *aff'd sub nom. In re Terrorist Bombings of U.S. Embassies in E. Afr.*, 552 F.3d 93 (2d Cir. 2008) (quoting 18 U.S.C. § 3500(b)). Within the Second Circuit, "a statement may 'relate,' within the meaning of the Jencks Act, not only to the witness' factual narrative, but also to impeachment of his direct testimony by showing bias and interest." *Id.* at 493.

Here, Special Agent Maurer's testimony about the May 2024 Mirandized interview will likely touch on other aspects of his investigation into defendant. To the extent that is so, the government must produce any statement by him that "relates to" that subject matter. *See id.* at 492–93 ("The Second Circuit has rejected the argument that the term

'relate to' is 'limited to factual narratives.'"). For example, if Special Agent Maurer testifies about defendant's identification of her kunya on the Military Training Document, the government must provide any statements by Special Agent Maurer related to the Military Training Document. This conclusion does not appear to be in dispute, as the government asserts that it "will disclose Special Agent Maurer's prior statements that relate to the subject matter of the Expected Testimony." Gov't's Mot. 66; *see United States v. Pacelli*, 491 F.2d 1108, 1118 (2d Cir. 1974) ("[W]here the government's representations as to relevancy are challenged, the better practice is for it to make the disputed statement available to the trial judge for an in camera inspection and ruling . . . rather than risk reversal of a conviction because it played its cards too close to the vest."). That said, the Court declines to adopt defendant's position that the government must disclose "all prior statements made by Special Agent Maurer regarding his investigation of defendant." Def.'s Opp'n 37. "Though this [Circuit's] interpretation of 'relate to' is broad, it is not without limits." *Bin Laden*, 397 F. Supp. 2d at 493.

Accordingly, the government's motion is GRANTED as described by the Court. Because Special Agent Maurer "is the primary case agent and thus was involved in all aspects of the government's investigation of the defendant," Gov't's Mot. 66, and because the Expected Testimony bears on many other aspects of the investigation, the government is ordered to produce all prior statements made by Special Agent Maurer to the Court for review by September 15, 2026, so the Court may understand the witness's prior statements to determine their relationship, if any, to the Expected Testimony.

G. Admissions of Certain Records

The government moves to admit evidence of several records it has collected over the course of its investigation pursuant to records certifications of regularly conducted

activity. Def.'s Opp'n 69–71. These include "certified records showing the defendant's use and ownership of an email address corroborating her kunya, evidence from Inkpad, her travel records, her passport records, and records reflecting the information the defendant provided to the SDF when she was arrested in 2019 and then later in 2020." Gov't's Mot. 69.

Defendant "does not object to the introduction of any of the[] particular business records certifications" the government has provided to date. Def.'s Opp'n 39; *see* Gov't's Mot. Ex. A (Certifications from Google, regarding one email account; from United States Customs and Border Protection, regarding travel records; from the United States Department of State, regarding passport records, and from Workpail LLC, regarding Notepad records from two accounts), ECF No. 188. However, defendant argues that because the government has not provided the appropriate certified records as to the 2019 and 2020 bio-enrollments, the motion must be denied as to those records. Def.'s Opp'n 40.

Certifications of domestic business records are governed by Rule 902, which states that "records of regularly conducted activities . . . are self-authenticating when they are accompanied by a certification of the custodian or another qualified person that complies with a federal statute or a rule prescribed by the Supreme Court." *Gasperini*, 2017 WL 3140366, at *8 (quoting Fed. R. Evid. 902(11)). "Similarly, 18 U.S.C. § 3505 provides for authentication by certification and admissibility of foreign business records in criminal proceedings." *United States v. Hunt*, 534 F. Supp. 3d 233, 253–54 (E.D.N.Y. 2021).

Here, defendant does not raise any objection to the use of the records certifications other than the fact that she disputes the admissibility of some of the evidence that the records certifications support, and separately that the government has yet to produce

certified records for the 2019 and 2020 bio-enrollments. Def.'s Opp'n 39. Accordingly, the government's motion is GRANTED in part. The government is permitted to use the records certifications that it has already produced. The government may move to use additional certifications as they become available.[18]

### H. Preclusion of Argument or Evidence Regarding Defendant's Age or Alleged Susceptibility to ISIS Propaganda

The government moves to preclude evidence and arguments regarding defendant's age, including arguments she may offer about her susceptibility to indoctrination by her father, her family, her husband, or her husband's family. Gov't's Mot. 71–72. Defendant asserts that she has "no intention of arguing to the jury that she was susceptible to ISIS propaganda or indoctrinated by her father, family, husband, or husband's family" nor that she will argue "that her conduct be excused, or that she should be acquitted, out of sympathy." Def.'s Opp'n 41. However, defendant argues that her age is relevant to the charged crime as it bears on her intent to travel to ISIS controlled territory as well as the voluntariness of any admissions she made to law enforcement. Def.'s Opp'n 41.

---

[18] Defendant faults the government for failing to produce the certifications associated with the 2019 and 2020 bio-enrollments as required under 18 U.S.C. § 3505(d). Given the government's argument regarding the bio-enrollments, including its representation that it will produce a witness with knowledge sufficient to establish that the 2019 bio-enrollment falls within the business records exception, the Court assumes that the government will not be relying on a foreign business certification to authenticate that evidence. Should that assumption turn out to be incorrect, defendant may renew her objection to the evidence and the government's untimely notice of the records certification associated with it. *Cf. United States v. Khatallah*, 278 F. Supp. 3d 1, 10 (D.D.C. 2017) ("Given defense counsel's longstanding awareness of the Government's general intent to use the records and longstanding possession of the records, the Court concludes they have had adequate time to investigate into the records' authenticity and accuracy and are therefore not prejudiced by any delay in receiving written notice."); *see* 18 U.S.C. § 3505(b) ("At the arraignment or as soon after the arraignment as practicable, a party intending to offer in evidence under this section a foreign record of regularly conducted activity shall provide written notice of that intention to each other party.").

Although defendant was 18 years old and a legal adult at the time of the charged conduct, the circumstances of her travel to ISIS-controlled territory—including that she was a minor at that time—are relevant considerations for the jury. The Court declines to categorically foreclose that evidence from being referenced at trial. The government's motion is therefore DENIED as moot as to references to defendant's susceptibility to propaganda and indoctrination and DENIED without prejudice to renewal at trial as to the fact that she was a minor when she was brought to ISIS controlled territory.

I. Preclusion of Argument or Evidence Regarding a Duress, Coercion, or "Duress-lite" Defense

The government moves to preclude any defense that defendant's conduct was brought on by duress, coercion, or a condition akin to duress, which it frames as "duress-lite." Gov't's Mot. 74. Defendant argues that this motion is premature. Def.'s Opp'n 42.

A defendant invoking an affirmative defense of coercion or duress must establish, by a preponderance of the evidence: "(1) a threat of force directed at the time of the defendant's conduct; (2) a threat sufficient to induce a well-founded fear of impending death or serious bodily injury; and (3) a lack of a reasonable opportunity to escape harm other than by engaging in the illegal activity." *United States v. Hernandez*, 894 F.3d 496, 503 (2d Cir. 2018). A defendant must make some showing on each element, including the element that the defendant lacked a reasonable means to escape the threatening conduct "by seeking the intervention of the appropriate authorities." *United States v. Bakhtiari*, 913 F.2d 1053, 1058 (2d Cir. 1990). "Depending on the circumstances of the case, further explanation—or a caveat—to the jury as to these elements may be warranted." *Hernandez*, 894 F.3d at 504.

Here, "before the Court has seen the evidence that . . . [d]efendant intends to introduce, denying [d]efendant h[er] right to an affirmative defense is premature." *United States v. Sosa-Zarzuela*, No. 21-cr-00041, 2022 WL 16647783, at *2 (S.D.N.Y. Nov. 3, 2022). If at trial defendant is "unable to present evidence sufficient to support a[] [coercion or duress] defense, the Court will instruct the jury that [coercion or duress] is not a defense in this case." *Id.*; *see also United States v. Abdalla*, 346 F. Supp. 3d 420, 428 (S.D.N.Y. 2018) ("At this point, it is unclear whether the evidence presented at trial will be sufficient to establish the elements of an entrapment defense. That does not mean, however, that Defendants should be preemptively foreclosed from offering such evidence.").

Accordingly, the government's motion is DENIED. At the close of evidence, the government may move for an instruction as to the availability of any affirmative defenses.

J. Preclusion of Evidence or Argument on Possible Punishments

The government seeks to preclude defendant from making any argument concerning punishment or potential collateral consequences that may result from defendant's conviction. Gov't's Mot. 78–79. "Information regarding the consequences of a verdict is [] irrelevant to the jury's task." *United States v. Jadusingh*, No. 18-cr-00257, 2020 WL 207950, at *3 (E.D.N.Y. Jan. 14, 2020) (quoting *Shannon v. United States*, 512 U.S. 573, 579 (1994)).

Accordingly, the government's motion is GRANTED. This ruling does not preclude defendant from testifying as to her criminal history, in the event she chooses to testify. *See United States v. Blackwell*, 853 F.2d 86, 88 (2d Cir. 1988) ("[T]he testimony that [the

defendant] had never been arrested or convicted of a crime would have been of some value to the jury in assessing [his] credibility[.]").[19]

II. Defendant's Motions in Limine

Defendant has filed motions in limine to: (1) compel the government to provide notice of any coconspirator statements it intends to introduce; (2) preclude or limit inflammatory testimony about the history of ISIS and its terrorist activities; (3) preclude communications between defendant and Abu Ali pursuant to the marital communications privilege; (4) preclude statements allegedly made by defendant to Kurdish forces, and arguments regarding the timing of her surrender; (5) admit certain relevant Nusaybah Katiba documents; and (6) admit statements made by her brother-in-law. Def.'s Mot. 3–4.

A. Notice Regarding Coconspirator Statements

Defendant moves for an order requiring the government to disclose statements that it seeks to admit as coconspirator statements pursuant to Rule 801(d)(2)(E), and subsequently as necessary for a determination whether any such coconspirator statements meet the admissibility bar under Rule 801(d)(2)(E). Def.'s Mot. 4.

Given the government's disclosure of the coconspirator statements it intends to admit at this time, defendant's motion is DENIED as moot.

B. Preclusion of Inflammatory Testimony About the History of ISIS

Defendant moves to preclude or limit any exhibits or testimony the government seeks to admit related to the history of ISIS and its terrorist activities, including testimony related to "(1) the history and origins of ISIS, (2) the geographic bases of operation of ISIS,

---

[19] If that happens, the parties may propose an appropriate limiting instruction. *See* Fed. R. Evid. 105.

(3) ISIS's control of territory in Iraq and Syria, (4) the objectives of ISIS and its leaders, including the establishment and proclamation of a caliphate, (5) that ISIS was the deadliest terrorist organization in the world, (6) that ISIS engaged in acts of extreme violence in the territories it controlled, (7) that ISIS urged others to travel to ISIS-controlled territory to join ISIS, (8) and the history of terrorist attacks that have been perpetrated on behalf of ISIS." Def.'s Mot. 5–6. Defendant argues such testimony is irrelevant, unfairly prejudicial, and unduly cumulative. Def.'s Mot. 6.

As defendant concedes, an element of the charged offense is that she had "knowledge that the organization is a designated terrorist organization . . . that the organization has engaged or engages in terrorist activity . . . or that the organization has engaged or engages in terrorism." 18 U.S.C. § 2339D(a); *see* Def.'s Mot. 6. Accordingly, at least some context for ISIS, including its history and designation as a terrorist organization, is plainly relevant. *See* Fed. R. Evid. 401. However, it is unclear how extensive evidence of specific ISIS attacks, Def.'s Mot. 6 n.4, would not be substantially outweighed by the risk of unfair prejudice, considering that defendant is charged with receiving military-type training as opposed to a specific act of violence. *See* Indictment 1. And the government has represented that it "does not intend to offer gratuitously graphic testimony about ISIS's violence." Gov't's Opp'n 10.

Bearing all this in mind, as well as the parties' briefing regarding the government's expert witnesses, the Court declines to preemptively limit testimony on the history of ISIS and a general account of the organization's activities. That said, to the extent the government elicits testimony defendant feels is unduly prejudicial or cumulative, defendant may object at trial. Accordingly, defendant's motion is DENIED without

prejudice to renewal at trial. The Court RESERVES DECISION on the parties' arguments regarding a proposed jury instruction on this evidence. Def.'s Mot. 7; Gov't's Opp'n 11.

C. Preclusion of References to Communications Between Defendant and her then-Husband

The Court RESERVES DECISION on defendant's motion to preclude references to communications between her and Abu Ali.

D. Preclusion of References to Statements Defendant Made to Kurdish Forces and Arguments Regarding the Timing of her Surrender

Given the Court's ruling on the government's motion regarding the 2019 and 2020 bio-enrollments, *see supra* § I.A.4, defendant's motion is DENIED without prejudice to renew at trial.

E. Admission of Certain Relevant Nusaybah Katiba Documents

Defendant moves to admit certain Nusaybah Katiba documents, including: "two Nusaybah Katiba application forms, and admissions decisions, found on a hard drive in the office of the mayor of Raqqa, Syria, and a Nusaybah Katiba identification card, provided by foreign law enforcement to the [FBI]." Def.'s Mot. 18–19. Defendant asserts, as she has throughout this case, that these materials are relevant because their existence as to other women, when combined with their absence as to her, makes it less likely that she was a member of Nusaybah Katiba. Def.'s Mot. 19.

The government argues that these documents are irrelevant as defendant is not charged "with being a card-carrying member of the Nusaybah Katiba." Gov't's Opp'n 25. And the government contends that allowing defendant to make an argument based on these documents risks confusing and misleading the jury. Gov't's Opp'n 23–25.

These Nusaybah Katiba documents are relevant to the charged offense. Although defendant has not supported her theory that these documents come in a "set," there is

support for her theory that there is a process for becoming a member of Nusaybah Katiba. *See* Gov't's Opp'n 25 ("To be sure, the backdrop of these documents is the ISIS bureaucracy."). And as previously stated, the Court finds it difficult to believe that ISIS was providing training to individuals who were not a part of the organization. *See* Order on Mot. to Dismiss 10, ECF No. 181 ("[T]hat the government's witness testified that the ISIS Department of Soldiers kept records of '[a]nything related to military matters' including 'numbers and names [of those] who joined them' and 'details about weapons and which soldier has what,' Mar. 17 Hr'g Tr. 36:13–24, ECF No. 158, undermines the notion that ISIS was providing training to individuals unaffiliated with the organization."). Accordingly, the fact that these documents exist, and the lack of evidence that defendant had them, has some tendency to make it less probable that she received military training from Nusaybah Katiba. *See* Fed. R. Evid. 401. The Court is not convinced that the jury will be confused by this evidence or argument on this theory, let alone confused in a way that would substantially outweigh this evidence's probative value. *See* Fed R. Evid. 403.

Because the government does not respond to defendant's arguments on authenticity or hearsay—likely because it has no meritorious argument to advance—the Court considers those points conceded.[20]

---

[20] The fact that these documents were produced by the government in discovery, *see John Paul Mitchell Sys. v. Quality King Distributors, Inc.*, 106 F. Supp. 2d 462, 472 (S.D.N.Y. 2000), along with the various indicia of reliability on the face of the documents themselves (signatures, official ISIS stamps, dates), is sufficient to meet the bar for authentication, which "is not particularly high." *United States v. Gagliardi*, 506 F.3d 140, 151 (2d Cir. 2007). And because the documents are not offered to show that any of the women actually joined or acted on behalf of Nusaybah Katiba, but rather as proof that such documents exist, they are not inadmissible hearsay. *See Thomas v. iStar Fin., Inc.,* 448 F. Supp. 2d 532, 536 (S.D.N.Y. 2006) ("[S]tatements offered only to prove that the statements were made are not hearsay.").

Accordingly, defendant's motion is GRANTED.

F. Admission of Statements Made by Defendant's Brother-in-Law

Defendant moves to admit three statements made by her brother-in-law, Nadim Mujcinovic, to FBI agents during interviews conducted at Hasakah Prison in Syria on September 10, 2024; September 23, 2024; and October 7, 2025. Def.'s Mot. 22. During those interviews, Mujcinovic said that "(1) Cihat Salman was the only member of the Salman family who subscribed to ISIS ideology; (2) the Salman family discussed their previous life often and wanted to leave Syria; and (3) no member of the Salman family was involved in the Nusaybah Katiba." Def.'s Mot. 22. Defendant argues that Mujcinovic is unavailable and therefore these statements, although undisputedly hearsay, should be admitted under the residual hearsay exception, Rule 807. Def.'s Mot. 22.

The government disagrees, primarily disputing the trustworthiness of Mujcinovic's statements, but also noting that these statements are not "more probative on the point for which [they are] offered than any other evidence that the proponent can obtain through reasonable efforts," because other of defendant's family members could testify to these very facts. Gov't's Opp'n 28–29.

The residual hearsay exception provides that, under certain conditions, "a hearsay statement is not excluded by the rule against hearsay even if the statement is not specifically covered by a hearsay exception in Rule 803 or 804." Fed. R. Evid. 807(a). Those conditions arise when (1) the evidence "is particularly trustworthy;" (2) the evidence "bears on a material fact;" (3) "is the most probative evidence addressing that fact;" (4) "admission is consistent with the rules of evidence and advances the interests of justice;" and (5) "proffer [of the evidence] follows adequate notice to the adverse party." *United States v. Dawkins*, 999 F.3d 767, 791 (2d Cir. 2021). A hearsay statement admitted under

the residual exception "must satisfy all of these requirements," and it must be "particularly trustworthy." *United States v. Morgan*, 385 F.3d 196, 208 (2d Cir. 2004).

Mujcinovic's statements do not satisfy the requirements of Rule 807. Even assuming that the statements bear sufficient indicia of trustworthiness, it cannot be said that any or all of these statements are "the most probative evidence addressing the fact at issue." *Dawkins*, 999 F.3d at 791. That is because members of defendant's family, who are available to testify, have made substantially similar statements on the same issue. *See* Gov't's Opp'n 29 (citing FBI Interviews with other family members in which they state, among other things, "no one in [defendant's sister's] family received any training[,]" "whatever evidence the FBI thinks it has, they are wrong and [defendant and her family] did not want to join ISIS[,]" and that they "did not remember [defendant] being involved in any criminal activity involving ISIS[.]").[21]

Accordingly, defendant's motion is DENIED.

---

[21] Defendant's arguments to the contrary do not change this result. Although Mujcinovic's statements were made several months after Rabia, Brandy, and Bilal's statements, *compare* Def.'s Mot. 22, *with* Gov't's Opp'n 29, Mujcinovic also said that "he did not interact with" defendant, Gov't's Mot. 28; *see* Def.'s Supp. Mot. to Dismiss 8, ECF No. 171, lessening the probative value of his statements as they specifically pertain to her. And while it is true that Mujcinovic did not have contact with the family at the time his statements were made, that only marginally bears on their trustworthiness given that—contact or not—distancing himself and his family from ISIS would have been in his interest at the time of the interviews.

## CONCLUSION

The government's motions in limine are GRANTED in part and DENIED in part and defendant's motions in limine are GRANTED in part and DENIED in part. The Court will rule on the remaining motions in limine for which the Court has not yet issued a decision in advance of the trial.

**SO ORDERED.**

*/s/ Natasha C. Merle*
NATASHA C. MERLE
United States District Judge

Dated: September 9, 2026
Brooklyn, New York