Federal Defenders
OF NEW YORK, INC.

Eastern District
One Pierrepont Plaza, 16th Floor
Brooklyn, NY 11201
Tel: (718) 330-1200 Fax: (718) 855-0760

Tamara L. Giwa
*Executive Director*

Michelle A. Gelernt
*Attorney-in-Charge*

November 20, 2026

**By ECF and Email**
The Honorable Natasha C. Merle
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

**Re:** **United States v. Halima Salman, 24-CR-206 (NCM)**
Opposition to Government's Motion for Remand

Dear Judge Merle,

On November 9, 2026, weeks after the verdict in her criminal trial, the government filed a motion out of the blue to remand Halima Salman. ECF No. 274. Though she is subject to no mandatory minimum, the government insists that the Court order her to surrender the day before her post-trial Rule 29 and 33 motions are due. The government's request is unjustified. Ms. Salman's extraordinary compliance with home incarceration since May 2024, the exceptional circumstances of her case, and the likelihood of either a judgment of acquittal or a new trial all exempt her from so-called "mandatory remand." The Court should deny the government's belated motion, or, in the alternative, stay its decision until it has a chance to review Ms. Salman's post-trial motions in the coming few weeks.

## I. Ms. Salman Meets the Requirements of 18 U.S.C. § 3145(c)

Your Honor should deny the government's motion and continue Ms. Salman's release on bond, as she "meets the conditions of release set forth in section 3143(a)(1)" and can "clearly show[] that there are exceptional reasons why [her] detention would not be appropriate." 18 U.S.C. § 3145(c). To do so, the Court must first find "by clear and convincing evidence" that Ms. Salman "is not likely to flee or pose a danger to the safety of any other person or the community." 18 U.S.C. § 3143(a)(1). The Court must then determine whether her "unique combination of circumstances" are "exceptional" or "out of the ordinary." *United States v. DiSomma*, 951 F.2d 494, 497 (2d. Cir. 1991). "The test under § 3145(c) is necessarily a flexible one, and district courts have wide latitude to determine whether a particular set of circumstances qualifies as exceptional." *United States v. Lea*, 360 F.3d 401, 403 (2d Cir. 2004). To continue Ms. Salman on bond, this Court must make findings on the record justifying the application of Section 3145(c). *United States v. Colon*, 821 Fed. Appx. 39, 41 (2d Cir. 2020).

Ms. Salman can easily establish the first prong, as her two-and-a-half-year record of extraordinary compliance with the terms of her home incarceration proves she will not flee.[1] Since this Court ordered her release on $500,000 bond on May 22, 2024, Ms. Salman has been subject to the strictest of conditions, including home incarceration, third-party custodians, and computer and internet restrictions and monitoring. ECF Nos. 19, 20. She has compiled fully with all terms of release, including when the Court has granted her modest variances, such as permission to attend school, work, and exercise. From October 3 through 27, 2026, Ms. Salman complied with all conditions of release in Brooklyn during her trial. She continued to do so following the verdict, immediately resuming compliance with home incarceration. She has continued to abide by her release terms following receipt of this motion. By her conduct, Ms. Salman has proven by clear and convincing evidence that she continues to pose no risk of flight.

The government's unserious efforts to demonstrate that Ms. Salman presents any risk of flight are betrayed by its own conduct. The government concedes, as it must, that "in an exercise of discretion" it "did not seek the defendant's immediate remand" when the jury returned its verdict. ECF No. 274 at 4 n.1. Then, while claiming that Ms. Salman is a risk of flight, the government paradoxically requests a self-surrender date a month in the future, necessarily trusting that she will not flee in the interim. *Id*. The government's choices belie its supposed concern that Ms. Salman will flee.

Nevertheless, despite her continuing demonstrated compliance with her bond conditions, the government argues that Ms. Salman will flee because "she faces a ten-year mandatory prison sentence" and because of her "perjury during trial." ECF No. 274 at 2, 3. Neither basis is true. First, Ms. Salman does not face any mandatory prison sentence, let alone a ten-year one. Her statute of conviction (if she is sentenced by this Court, which we do not believe she will be, *see* Part II) expressly allows a sentence of a fine in lieu of any incarceration, as the Department of Justice knows and has recently conceded. 18 U.S.C. § 2339D(a); *see United States v. Ramic*, 21-CR-13 (GNS) (W.D. Ky.), ECF No. 311 (Tr. of Sent. Apr. 14, 2025) at 19, 57 (government conceded that Court could lawfully impose sentence of a fine with no prison time on 2339D count, which Court then did); *see also United States v. Ramic*, 2025 WL 3147190, at *6, *10 (6th Cir. Nov. 5, 2025) (government's appellate brief conceded lawful sentence of a fine); *United States v. Ramic*, 175 F.4th 761 (6th Cir. 2026) (reversing sentence for other reasons). In fact, the Second Circuit has observed that the penalties for violating § 2339D are either a fine or up to ten years in prison, without a mandatory minimum. *United States v. Saab*, 164 F.4th 198, 216 n.7 (2d Cir. 2026) ("We have understood Section 2339D to prescribe only a statutory ceiling of 10 years' imprisonment"). And second, the government's insistence that Ms. Salman committed perjury during her trial is unfounded. A defendant who testifies that she is innocent, and then is convicted, does not commit perjury through the exercise of her constitutional right to testify. *United States v. Rosario*, 988 F.3d 630, 632-33 (2d Cir. 2021).

As to the second prong of the § 3145(c) test, Ms. Salman's "unique combination of circumstances" readily constitute "exceptional reasons" why her detention would be inappropriate. 18 U.S.C. § 3145(c). "The Second Circuit has explained that, in determining whether exceptional

[1] The government correctly has not claimed that Ms. Salman presents any danger to the safety of any other person or the community if continued on her release conditions. ECF No. 274.

reasons exist, 'a case-by-case evaluation is essential,' and a district court's discretion 'is constrained only by the language of the statute: exceptional reasons.'" *United States v. McKenzie*, 450 F. Supp. 3d 449, 452 (S.D.N.Y. 2020) (quoting *DiSomma*, 951 F.2d at 497). Circumstances may be extraordinary when they are "sufficiently dissimilar" from typical cases qualifying for mandatory detention. *United States v. Garcia*, 340 F.3d 1013, 1019-21 (9th Cir. 2003). Courts in this Circuit have recognized that a combination of otherwise unexceptional circumstances may be exceptional in the aggregate. *United States v. Rentas*, 09-CR-555 (HB), ECF No. 24, 2009 WL 3444943, at *1 (S.D.N.Y. Oct. 26, 2009) (collecting cases). In fact, as one court has made clear, "'exceptional' does not mean 'extreme' or 'novel,' but simply 'infrequent' or 'uncommon,'" which is "not an onerous hurdle to surmount." *United States v. Reboux*, 2007 WL 4409801, at *2 (N.D.N.Y. 2007).

Ms. Salman's circumstances are well beyond the ordinary. At her trial, Ms. Salman presented unrebutted evidence that she was unwittingly trafficked into Syria by her father when she was a minor. The government did not dispute that, once in ISIS territory, her father forced her into an arranged marriage to a stranger. It was during that arranged marriage that the government alleges Ms. Salman received military training – training that the government has never claimed she used to harm anyone. Following ISIS's fall, Ms. Salman spent more than five years in foreign detention under horrific conditions before being repatriated for prosecution. The Court may consider that detention when determining an appropriate sentence, including that it may not be credited by the Bureau of Prisons. U.S.S.G. § 5G1.3. The circumstances predating and surrounding Ms. Salman's crime of conviction are more than "uncommon," and "unique;" they are unprecedented in American legal history, and far different than the mine-run § 2339D case Congress had in mind when it enacted § 3143(a)(2); *see Garcia*, 340 F.3d at 1019-21. Layered over Ms. Salman's lack of a criminal record and extraordinary compliance with her conditions of release for two-and-a-half years, all of which has been spent under strict conditions of home incarceration that the Court may also consider when determining her sentence, Ms. Salman's circumstances are decidedly "exceptional" reasons why she should not now be placed in custody. *See* U.S.S.G. § 5C1.1(e)(3) ("One day of home detention [is equivalent to] one day of imprisonment"); *United States v. Singh*, 25-CR-449 (VEC), at 32 (S.D.N.Y. May 1, 2026) (following plea to drug case triggering mandatory detention, continuing release under § 3145(c): "I find that there are extraordinary circumstances here, including the fact that this defendant has served a very substantial period of time in pretrial home detention, which will be taken into account in determining what the sentence will be").

Continued release on bond following a jury's guilty verdict in a terrorism case is not unprecedented—it just happened in this courthouse, with this United States Attorneys' Office. In *United States v. Hashimi et al.*, 22-CR-553 (ENV), defendant At Taqi was charged with conspiracy to provide material support to a foreign terrorist organization, attempted material support, and money laundering, in violation of 18 U.S.C. § 2339B and § 1956(h). The terrorism counts have twenty-year maximum sentences, double Ms. Salman's ten. The conduct involved, among other things, attempting to send tens of thousands of dollars to ISIS, using encrypted chats and cryptocurrency to avoid detection, consuming and disseminating ISIS propaganda, and expressing support for violent acts of terrorism. On October 24, 2025, the jury returned a guilty verdict on all three counts. The government's request for detention was swiftly denied by Judge Vitaliano:

THE COURT: Any motions?

GOVERNMENT: Your Honor, at this time, we would move for a remand of the defendant.

THE COURT: The motion is denied.

*At Taqi*, Trial Tr. at 1567:3-6. The government did not appeal. For the past year since the jury trial, Mr. At Taqi has remained on bail, throughout the briefing of post-trial motions (including a juror misconduct hearing), remains at liberty pending sentencing, and has been fully compliant with his release conditions. Since At Taqi's convictions, Judge Vitaliano has granted a modification of his bail conditions. ECF No. 249 (permitting At Taqi to visit his uncle).

Because of her similar track record—as a young, American, first-time offender, confined to home incarceration with family and third-party custodians, ECF No. 42—this Court can have the same assurance as Judge Vitaliano that Ms. Salman, like Mr. At Taqi, will continue to comply with all conditions of her release despite the guilty verdict. All the Court's findings that supported the release order in 2024 remain true, and her extraordinary compliance in the time since, through trial, and after the verdict, have only lessened the risks of flight or danger, not increased them. Ms. Salman has met all the requirements of 18 U.S.C. § 3145(c), and should remain at liberty pending post-trial motion practice and, if applicable, pending sentencing.

## II. Ms. Salman Meets the Requirements of 18 U.S.C. § 3143(a)(2)

Independently, the Court should deny the government's motion because Ms. Salman meets the statutory exceptions to mandatory remand. 18 U.S.C. § 3143(a)(2)(A)(i) and (B) establish a two-part exception, applicable when the Court finds:

(1) A substantial likelihood that a motion for acquittal or new trial will be granted; 18 U.S.C. § 3143(a)(2)(A)(i); and

(2) By clear and convincing evidence that the person is not likely to flee or pose a danger to any other person or the community. 18 U.S.C. § 3143(a)(2)(B).

The standard and analysis for the second prong is identical to that under 18 U.S.C. § 3145(c). Because Ms. Salman easily clears that bar there, she meets it here, too.

As to the first prong, Ms. Salman's post-trial motions are due in three weeks. In her briefing, Ms. Salman will establish a substantial likelihood both that a motion for acquittal will be granted pursuant to Federal Rule of Criminal Procedure 29 and that a new trial will be granted pursuant to Federal Rule of Criminal Procedure 33. There is a substantial likelihood that her motion for acquittal will be granted given the insufficient evidence sustaining all elements of her conviction, even when taken in the light most favorable to the government. Fed. R. Crim. P. 29(b),

(c).[2] And, there is a substantial likelihood that the court will "vacate any judgment and grant a new trial" as "the interest of justice" will "so require[]," to "avert a perceived miscarriage of justice," given the erroneous admission of evidence and rampant prosecutorial misconduct in her trial. Fed. R. Crim. P. 33(a); *United States v. Ferguson*, 246 F.3d 129, 133 (2d Cir. 2001).

At the very least, if the Court finds that extraordinary circumstances do not exist (*see* Part I), as it should not, the Court should stay its decision on the government's remand motion until it has actually seen the post-trial motions. Prior to its motion for remand—during the government's apparently temporary "exercise of discretion" consenting to Ms. Salman's continued release—the government agreed to a post-trial motion schedule, with Ms. Salman's motions due on December 10, 2026, and briefing to be completed by January 28, 2027. ECF No. 272. Without any justification, the government's surprise motion selects December 9, 2026, the day before the Court receives the defense motions, as the day she should enter custody. That proposed timeline is both curious and telling. The Court is well aware that this trial raised a host of complicated issues and resulted in a lengthy deliberation during which the jury struggled to reach a unanimous verdict. The Court should have the benefit of the parties' briefing, which will be complete in only two months, to make a reasoned determination as to the likelihood of granting post-trial relief. Staying decision of this motion carries no risk: Ms. Salman has complied with all conditions of release, and can be trusted to continue to do so. But granting the government's motion could cause enormous and irreparable prejudice to Ms. Salman: she could remain incarcerated for an indefinite period, following which the Court grants an acquittal or new trial.

Accordingly, this Court should find that Ms. Salman has established by clear and convincing evidence that she is not likely to flee or pose a danger to the safety of any other person or the community if she continues to be released. The Court should find that she has met all the requirements of 18 U.S.C. § 3145(c), and deny the government's motion for remand. In the alternative, the Court should either deny the government's motion under § 3143(a)(2), or stay consideration of the government's motion to consider the defendant's post-trial showing of a substantial likelihood of post-trial relief.

Thank you for your consideration.

Respectfully Submitted,

/s/

Mia Eisner-Grynberg
Marissa Sherman
Samuel Jacobson
Michael Arthus
*Counsel for Halima Salman*

cc: all counsel of record (by ECF)

---

[2] The government's motion appears to argue that there cannot be a substantial likelihood that a Rule 29 motion will be granted because Mr. Salman was convicted by a jury. ECF No. 274 at 3. That logic is circular: if a verdict negated a Rule 29 motion, Rule 29(c) would be a nullity.